GARY PLASTIC PACKAGING CORP., a New York Corporation, or itself and others similarly situated, Plaintiffs,

v.

MERRILL LYNCH, PIERCE, FENNER AND SMITH, INC., and Merrill Lynch Money Markets, Inc., Defendants.

No. 83 Civ. 9112 (CSH).

United States District Court, S.D. New York.

Feb. 10, 1988.

Bailey & Dawes, Miami, Fla., for plaintiffs; Norman B. Arnoff, Arnoff & Merin, P.C., New York City, of counsel.

Brown, Wood, Ivey, Mitchell & Petty, New York City, for defendants; E. Michael Bradley, Paul Windels, III, William R. Glendon, Rogers & Wells, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This federal securities fraud case is before the Court for class certification.

Plaintiff purchased from defendants a number of $100,000 negotiable and insured certificates of deposit (CDs) issued by certain banks and savings institutions. Plaintiff is a New York business corporation. Defendant Merrill Lynch, Pierce, Fenner and Smith, Inc. is a full service financial and brokerage corporation. Defendant Merrill Lynch Money Markets, Inc. is a wholly owned subsidiary. The defendants will be collectively referred to as "Merrill Lynch."

Plaintiff's amended complaint alleges omission of material facts from an information bulletin Merrill Lynch issued to describe the investment program in suit. Plaintiff asks to be certified under Rule 23, F.R.Civ.P., as representative of a class consisting of "all purchasers of CDs from Merrill Lynch during the period May, 1982 to the present time."

Plaintiff filed its original complaint in the United States District Court for the Southern District of Florida. That court transferred the case here *sua sponte*. Judge Brieant (as he then was) granted summary judgment dismissing the complaint and refused plaintiff leave to replead. [1984] Fed.Sec.L.Rep. (CCH) ¶ 91, 490 (S.D.N.Y. 1984) [available on WESTLAW, 1984 WL 2429]. The Second Circuit reversed, 756 F.2d 230 (2d Cir.1985), holding that the CDs in question constituted "securities" within the amibt of the federal statutes, and that the amended complaint stated a viable securities fraud claim. Extensive discovery then took place. Plaintiff now moves for class certification. Defendants resist.

### I.

The factual background appears in the cited opinions, familiarity with which is assumed. For present purposes it is suffi-

cient to say that in September, 1980 defendant Merrill Lynch Money Markets, Inc. issued an "Information Bulletin" (hereinafter the "September 1980 Bulletin" or "Bulletin") describing a $100,000 CD program. Executives at defendants' head offices sent the Bulletin to their account executives in Merrill Lynch field offices. Unlike an earlier written description of the program Merrill Lynch issued in July 1980 for internal use only, the September 1980 Bulletin was available both to Merrill Lynch account executives and, through them, to the investing public.[1] The Court of Appeals, after quoting the September 1980 Bulletin in its entirety, held that that document's alleged failure to disclose the nature and extent of Merrill Lynch's compensation on program transactions might state a federal securities fraud claim. "Commissions that defendants receive on the CDs they sell to the public are relevant and must be disclosed." 756 F.2d at 242.

However, discovery has revealed that plaintiff did not see the Bulletin and did not rely on it in deciding to purchase CDs from defendants. The following facts and circumstances now emerge.

Plaintiff Gary Plastic Packaging Corp. (hereinafter "Gary Plastic") is a New York corporation closely held by a family named Schur. There are four shareholders: Marilyn Schur Hellinger; her brothers Kenneth and Robert Schur; and Gary Hellinger, husband of Marilyn. Gary and Marilyn each own 25% of the shares of Gary Plastics, Kenneth owns 35%, and Robert 15%. Gary, Marilyn and Kenneth are the present directors. Until 1984 Robert was also a director. Gary is president. Robert is general counsel, vice-president, and assistant secretary.

Robert is also a partner in the Miami firm of Bailey and Dawes, selected by Gary Plastic as class counsel.

Another family member is Howard Schur, first cousin of Marilyn, Kenneth and Robert, and nephew of Joseph Schur, father of Marilyn, Kenneth and Robert, and director and majority shareholder of Gary Plastic until 1984. Howard is a stockbroker whose career has led to employment at a number of brokerage houses, including at the pertinent times Merrill Lynch. Whenever Howard changed brokerages, the Schur family and Gary Plastic accounts went with him.

During May, June and July 1982 Gary Plastic bought twelve short term[2] (30, 60 or 90 day) $100,000 CDs from Merrill Lynch through Howard Schur. Each purchase was made as a result of oral representations made by Howard Schur to Hellinger. Hellinger never saw the Bulletin. Nor did he see advertisements Merrill Lynch ran in newspapers describing its $100,000 CD program. Hellinger relied solely on what Howard Schur told him. So did Robert Schur when, in July 1982 he bought a 30–day $100,000 CD from Merrill Lynch through Howard Schur. Howard Schur received commissions on these sales.

A few days before July 28, 1982, Hellinger received an unsolicited telephone call from one Peter Thomas. Thomas worked at State Savings and Loan Association ("State"), an issuer of some of the CDs that Gary Plastic had purchased from Merrill Lynch. Thomas offered to Hellinger a CD at an interest rate "about one and a half or two percent higher" than the rate Gary Plastic had received from Merrill Lynch on earlier CDs.[3] That differential Hellinger testified, made him "very, very upset." He discussed the matter with his wife and brother-in-law Robert and asked Robert to look into the matter.[4]

On July 28, 1982 Gary Plastic purchased through Thomas directly a State 41 day $100,000 CD. Robert Schur bought a 60 day $100,000 CD from State on August 2 when his CD purchased through Merrill Lynch matured.

---

1. Deposition of Emanuel Falzon at Tr. 208–209; deposition of Donald Caccipaglia at Tr. 70–72.

2. The particulars of each CD (issuer, maturities, and interest rate) are listed by the Court of Appeals at 756 F.2d 234 n. 2

3. Hellinger deposition at Tr. 221.

4. *Id.* at 141, 173.

However, twice in August and twice in October, 1982, when CDs issued by other banks and purchased by Gary Plastic from Merrill Lynch matured, Gary Plastic bought four new CDs from those issuers through its Merrill Lynch account, for which Howard Schur was the representative. Hellinger has testified at his deposition that he did not know of those purchases at the time; but the testimony of the company bookkeeper, Muriel Kaye, would clearly support a contrary inference.

Between September 1982 and December 1983, Gary Plastic bought seven more $100,000 CDs directly through Thomas. Robert Schur bought a CD through Thomas in October 1982.

Howard Schur, who had joined Merrill Lynch in 1978, transferred to another brokerage in 1983.

At a Schur family meeting during Passover 1983, the Gary Plastic directors decided to commence this action. Robert Schur recommended and Gary Plastic accepted that Guy B. Bailey, Jr., Esq., Robert's partner at Bailey & Dawes, be retained as counsel, together with the firm. Mr. Bailey is not an experienced class action attorney.[5] The firm presently consists of eight partners and two associates.[6] The firm's fee arrangement contemplates Robert Schur's participation in a contingent fee, with each Bailey & Dawes partner working on the case (including Robert Schur) receiving double his or her hourly rate, "and if the court awards greater than that, then it would be shared equally."[7]

## II.

In these circumstances, defendant challenge class certification and representation on the grounds of lack of commonality, typicality and adequacy, factors complicated in defendants' view by issues arising from the canons of professional ethics.

Preliminarily it is useful to narrow the focus. Gary Plastic asks to represent a class consisting of all purchasers from Merrill Lynch of any CDs of any denomination, under any program, from May 1982 to the present. Disregarding any other problems, this is far too broad. Plaintiff complains of losses suffered as the result of its participation in a particular program, described by a particular document plaintiff says is fraudulent. The depositions show Merrill Lynch offered a variety of CD investment vehicles to a variety of investors. Given plaintiff's emphasis on the $100,000 program described in the September 1980 Bulletin, as reflected by the Second Circuit's opinion, any class plaintiff might properly represent would be limited to purchasers of CDs from Merrill Lynch under that program.

■ Turning to that program, defendants' first objection is that in making their purchases Hellinger and Robert Schur relied solely on the oral representations of Howard Schur. That is true. It is also generally true that class treatment is denied in securities fraud cases where it is claimed that purchases were fraudulently induced by the oral representations of individual brokers or advisors. *See, e.g., In re Scientific Control Corp. Securities Litigation*, 71 F.R.D. 491, 500 (S.D.N.Y.1976).

■ But plaintiff advances a particular theory in the case at bar. The case for plaintiff is that defendants' material omissions from the September 1980 Bulletin, drafted by head office executives, misled both its account executives in the field and investors with whom they dealt. Assuming *arguendo* that the Bulletin failed to disclose defendants' compensation in violation of the securities laws, field brokers and customers alike were misled. This is the theory stressed by plaintiff's counsel at oral argument.[8] And there is authority for the proposition that where "a single writ-

---

5. Mr. Bailey candidly acknowledged at oral argument that he had been involved in only one prior class action involving a shoe company whose name he could not recall; his involvement "didn't last very long." Tr. 13–14.

6. Source: *Martindale–Hubbell* (1987).

7. Deposition of Robert Schur at Tr. 153–155.

8. "That omission which was kept from its own account executives was the predominant thing." Argument of counsel at Tr. 6.

ten document is alleged to be materially false and misleading, the common questions predominate over those affecting only individual class members." *Friedlander v. Barnes*, 104 F.R.D. 417, 419 (S.D.N.Y. 1984), citing *Korn v. Franchard Corp.*, 456 F.2d 1206, 1212 (2d Cir.1972). *See also Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir.1983) (where defendants commit "the same unlawful acts in the same method against the entire class", all class members "have identical claims", and the "degree of reliance placed on the prospectuses by the various class members is not a controlling element"); *Green v. Wolf Corp.*, 406 F.2d 291, 299 (2d Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed. 2d 766 (1969).

While the question is close, I conclude that given plaintiff's fraud theory, its sole reliance upon the oral representations of Howard Schur is not fatal to concepts of commonality or typicality.

### III.

■ Where this class action fails is in the adequacy of the class representative and the inappropriate selection of its counsel.

I have concluded that Hellinger's and Robert Schur's reliance on Howard Schur's oral representations do not, standing alone, preclude certification. But substantial questions remain.

In the case at bar, a closely held family corporation purchased securities through a family member broker. Those purchases continued even after the corporation's officers and directors learned about the alleged fraud of which plaintiff now complains. During the pertinent times, a family member (Robert Schur) played the several roles of corporate director, officer, and shareholder, individual securities purchaser, and attorney investigating the circumstances of the alleged fraud. That individual's law firm was ultimately retained as plaintiff's counsel and purported class counsel, with that particular family member expecting to be compensated at twice his regular hourly rate (or possibly more) from any proceeds of the litigation.

To recite these facts is to identify a number of significant problems.

First, Gary Plastic is subject to a unique defense on the issue of reliance. Hellinger has testified that when he received Thomas's unsolicited telephone call and learned of the interest rate differential, he was very upset. That sense of outrage, plaintiff says, eventually triggered this suit. Plaintiff's theory is that it relied on the Bulletin's falsely created impression (conveyed to brokers like Howard Schur, although not to Hellinger) that the interest rates paid to purchasers coincided with the interests rates paid by the issuing banks. But Gary Plastic purchased four more $100,000 CDs from Merrill Lynch after the revelatory Thomas telephone call and Hellinger's consequent outrage.

To be sure, Hellinger now says that he did not know that the closely held corporation of which he was president had entered into these transactions. No view need be expressed on the ultimate resolution of that issue to say that it is bound to be hotly contested. For if the finders of the fact conclude that Gary Plastic knowingly continued to purchase CDs from Merrill Lynch (and to the benefit of Howard Schur) after the Thomas conversation, the elements of materiality and reliance, crucial in any fraud case, are undermined.

There is ample authority in this circuit for rejecting as class representative a claimant subject to unique defenses. *Kline v. Wolf*, 88 F.R.D. 696 (S.D.N.Y. 1981) (Weinfeld, J.), *aff'd*, 702 F.2d 400 (2d Cir.1983); *Kraus v. Patterson Parchment Paper Co.*, 65 F.R.D. 368 (S.D.N.Y.1974). The rationale was stated by the Seventh Circuity in *Koos v. First National Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir.1974): "Where it is predictable where a major focus litigation will be an arguable defense unique to the named plaintiff, then the named plaintiff is not a proper representative." In the case at bar, the defense of lack of materiality, lack of reliance, waiver and estoppel clearly arise out of Gary Plastic's course of conduct. These are precisely the concerns which Judge Weinfeld ex-

pressed in *Kline v. Wolf, supra,* at 700, and are fully applicable at bar:

"In sum, the unique defenses to which each plaintiff is subject, could become, as they already have, the focus of the litigation and upon a trial, divert attention from the substance of the basic claim. The remaining members of the class could be severely damaged by plaintiffs' representation of them. The respective claims of plaintiffs that their purchases of Allied stock were in reliance upon the integrity of the market and the Allied financial statement are subject to just such a challenge as to render their claims atypical of those of other members of the class." (footnote omitted).

I have also noted that a family relationship existed between the Merrill Lynch broker on plaintiff's account (Howard Schur) and the officers controlling plaintiff. Family relationship between a plaintiff and investor and the individual broker is also regarded as grounds for qualifying the investor as a class representative. *Shankroff v. Advest, Inc.,* 112 F.R.D. 190, 194 (S.D.N.Y.1986).

I do not raise that particular circumstance to the level of a *per se* rule. However, the Second Circuit said in *Kline v. Wolf, supra* at 702 F.2d 403 that a "class representative is fiduciary, and interests of the class are 'dependent upon his diligence, wisdom and integrity' ", citing and quoting *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 549–50, 69 S.Ct. 1221, 1227, 93 L.Ed. 1528 (1949). The family relationship at bar furnishes a significant increment to the unique defense factor which I have discussed previously.

■ Secondly, Gary Plastic's choice of the Bailey & Dawes firm of which Robert Schur is a partner is inappropriate under the Code of Professional Responsibility as enacted in New York State.

Disciplinary Rule 5–102(A) provides, with exceptions not here applicable:

"If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall

withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial ... N.Y. Jud.Law App (McKinney 1975)."

The question of whether a lawyer "ought" to be called as a witness on behalf of his client is an objective one for the trial judge. Neither litigants nor counsel can avoid the code by waiver or subjective disclaimer. *United States v. Cunningham,* 672 F.2d 1064, 1074 (2d Cir.1982).

At Hellinger's direction Robert Schur conducted the post-Thomas telephone call investigation, including discussions with Howard Schur. To rebut the inference of non-reliance arising out of Gary Plastic's four subsequent CD purchases from Merrill Lynch, Robert Schur is an obvious and objectively necessary witness. In discovery plaintiff has resisted inquiry into Robert Schur's activities, under the work product rule and attorney-client privilege. But these protestations are doubtful at best. They focus solely upon Robert Schur's role as an attorney. In fact, however, he played several additional roles: those of corporate shareholder, director, and officer. As Judge Weinfeld said, disqualifying counsel in comparable circumstances:

"Moreover, Mr. Harris is not an individual litigation; the corporation of which he is a major shareholder is the plaintiff. Neither Mr. Harris' stock ownership, nor his status as an officer, grants the corporation an individual right to select its own counsel when such selection is clearly contrary to the Code of Professional Responsibility." *Acme Analgesics Ltd. v. Lemmon Co.,* 602 F.Supp 306, 307 (S.D.N.Y.1985)

These circumstances suffice to distinguish the case at bar from *Bottaro v. Hatton Associates,* 680 F.2d 895 (2d Cir.1982), upon which plaintiff principally relies on the disqualification issue. The attorney in *Bottaro* was no more than an individual investor in the limited partnership venture which gave rise to the securities fraud action.

*Conclusion*

In the circumstances of this case, I conclude that Gary Plastic cannot be certified as a class representative; and that the firm of Bailey & Dawes must be disqualified from further litigation pressing Gary Plastic's claims against the Merrill Lynch defendants.

Accordingly plaintiff's motion for class certification is denied. Bailey & Dawes will be disqualified. I make no order with respect to plaintiff's local counsel.

Defendants are directed to settle an order consistent with this Opinion on seven (7) days notice.

It is SO ORDERED.