**RESERVE LIFE INSURANCE COMPANY and Midland National Life Insurance Company, Appellants,**

v.

**Marian J. KIRKLAND, Patricia L. Chaplinski, David Karl Jackson, and Susanne Jackson, on behalf of Themselves and all Others Similarly Situated, Appellees.**

No. 14–93–00161–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 29, 1996.

Max Hendrick, III, Houston, for appellants.

Edward J. O'Neill, Jr., Houston, Thomas M. Fulkerson, Houston, Jerry L. Mitchell Jr., Houston, for appellees.

Before LEE, AMIDEI and EDELMAN, JJ.

## MAJORITY OPINION ON REHEARING

AMIDEI, Justice.

Reserve Life Insurance Company and Midland National Life Insurance Company appeal from an interlocutory order certifying a class action. Appellants raise nine points of error. In our original opinion of October 27, 1994, we affirmed the trial court's order. Appellants filed a motion for rehearing, raising nine points of error. We overrule appellants' motion for rehearing. We withdraw our original opinion and substitute this opinion, affirming the order of the trial court.

Appellees brought this suit on their behalf and on behalf of all others similarly situated alleging fraud and violations of the Texas Deceptive Trade Practices Act and the Texas Insurance Code. The suit arose from certain

alleged misrepresentations appellants made in connection with rate increases on major medical health insurance policies appellees had purchased from appellants. Appellees moved for certification as a class action and the trial court granted this motion and entered an order certifying the following class:

All persons who purchased Major Medical Health Insurance from Reserve Life Insurance Company ("Reserve") or Westland Life Insurance Company ("Westland") in Texas from August 1, 1986 until the date this suit was filed, who utilized a Semi-Annual mode of premium payment, who received any of the forms attached as Exhibits "A–I" hereto, whose semi-annual premiums for the year in which they received the notice doubled or more than doubled, and who paid premiums after receiving the notice.

▪ In point of error one, appellants claim the trial court erred in certifying the class as those class members who "purchased ... in Texas." Appellants argue that this definition is vague. This court's review of the trial court's certification order is limited to determining if the court abused its discretion. *Adams v. Reagan,* 791 S.W.2d 284, 287 (Tex. App.—Fort Worth 1990, no writ). After reviewing the record, we may find abuse of discretion only if it is clear that the trial court's decision was arbitrary and unreasonable. *Id.* We must view the evidence in a light most favorable to the trial court's action, and indulge in every presumption favoring the trial court's action. *Id.*

One or more members of a class may sue on behalf of all only if:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

TEX.R.CIV.P. 42(a). A class action may be maintained if it meets these four prerequisites of Rule 42(a) and if it meets any of five other requirements under Rule 42(b). In this case, the trial court based its order on the following two of the five requirements under Rule 42(b):

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

. . . .

(4) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

TEX.R.CIV.P. 42(b)(1)(A), (b)(4).

▪ Appellants first argue the term "purchased ... in Texas" is too vague to meet the requirement that a class exists and because it is not administratively feasible for the court to determine its membership. In support of their argument, appellants cite federal case law requiring a class to be "adequately defined and clearly ascertainable." *DeBremaecker v. Short,* 433 F.2d 733 (5th Cir. 1970).[1] Although Federal Rule 23, upon which Rule 42 is based, does not require

---

1. Because TEX.R.CIV.P. 42 is patterned after the federal class action rule, federal decisions interpreting it are persuasive. *RSR Corp. v. Hayes,* 673 S.W.2d 928, 931–32 (Tex.App.—Dallas 1984, writ dism'd w.o.j.).

specificity in the class definition, case law has held that a proposed class must be clearly defined so that it is "administratively feasible for the court to determine whether a particular individual is a member." *Rios v. Marshall,* 100 F.R.D. 395, 403 (S.D.N.Y.1983). Vague and amorphous definitions do not meet the requirement of a sufficiently definite class definition. *Hendrickson v. Philadelphia Gas Works,* 672 F.Supp. 823, 840–41 (E.D.Pa.1987) (court denied certification for a class comprised of (1) all persons who have been or in the future may be denied essential gas service for arbitrary and capricious reasons, and (2) all persons who have been denied service for reasons other than non-payment, without a prompt and adequate procedure by which the basis of the denial is made known and can be contested either before or after the service is denied).

Appellants argue that when some individual determination of a potential member's status is necessary to determine membership in the class, the definition is too vague and class certification is inappropriate. *See, e.g., Winokur v. Bell Fed. Sav. & Loan Ass'n,* 58 F.R.D. 178, 181 (N.D.Ill.1972) (in securities fraud case, court denied class certification where different defendants utilized different advertisements relevant only to claims made by its own customers, making individual determination necessary). The federal cases cited by appellant, however, involve class descriptions that contain vague terms or require determinations of class member state of mind. *See DeBremaecker,* 433 F.2d at 734 (class definition included state residents active in the peace movement who had been harassed or were in fear of harassment); *Wagner v. Central Louisiana Elec. Co.,* 99 F.R.D. 279, 282 (E.D.La.1983) (subclass included "customers ... to whom the co-op would have already extended [service] but for the unlawful agreement...."); *Rios,* 100 F.R.D. at 403 (class defined as migrant farmworkers who were employed or applied for employment in the New York apple harvest with defendant growers and who suffered unlawful treatment or were discouraged from applying for employment by defendants' unlawful acts); *Zeltser v. Hunt,* 90 F.R.D. 65, 66 (S.D.N.Y.1981) (class included those who purchased silver futures contracts, silver bullion, or refined silver in commercial quantities); *Conway v. City of Kenosha,* 409 F.Supp. 344, 347 (E.D.Wis.1975) (general class consisted of all present and future city employees who live or will live in the future outside the county of Kenosha; subclasses included city employees who are not required by their jobs to be frequently called to unscheduled active duty on short notice and those employees in professional or management positions of a confidential nature who cannot be union members).

We find these cases distinguishable. Each of the class definitions in these cases contained some vague terms (e.g., "frequently called," "positions of a confidential nature," "involved in the peace movement") or contained terms relating to the plaintiff's state of mind, making it difficult to determine who was part of the class (e.g., "in fear of harassment," "deterred from applying for employment by unlawful acts"). We have no amorphous or unclear terms in the definition before us. The members of the class are clearly defined as those who purchased certain types of insurance policies in Texas. The class membership should be easily ascertainable from company records.

■ Appellants' next complaint is that this language does not clearly identify whether it applies solely to Texas residents. We do not find the term "purchased ... in Texas" ambiguous. If the court had meant to limit the class to Texas residents, he could have easily done so. Appellants raised this objection in the trial court and the judge stated that he intended to include all persons who purchased the policies in Texas because Texas law would apply to those persons. Appellants argue that most of the potential class members reside outside of Texas, paid premiums to brokers outside of Texas, and that the brokers merely forwarded the payments to Westland or Reserve in Texas. No evidence in the record supports this contention. We find no abuse of discretion and we overrule point of error one.

■ In point of error two, appellants contend the class definition fails because the class is not limited to persons insured under Reserve's policy PCM86, the type of insur-

ance the named appellees purchased. The class definition is not limited to purchasers of a certain type of policy. The named plaintiffs, appellees, were purchasers of the Reserve PCM86 insurance policy, but the letters referenced in the class definition were sent to policyholders of several types of policies.

Appellants also claim the class definition fails because it includes Westland. Appellants filed an affidavit of a Vice President of Reserve stating that Westland sold no policies in Texas or to any Texas residents. In support of their argument, appellants cite *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 119 F.R.D. 344 (S.D.N.Y.1988), *aff'd*, 903 F.2d 176 (2d Cir.1990), *cert. denied*, 498 U.S. 1025, 111 S.Ct. 675, 112 L.Ed.2d 667 (1991), and *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir.1973). In *La Mar*, the court held that a plaintiff with no cause of action against a defendant could not "fairly and adequately protect the interests" of those who do have such causes of action. 489 F.2d at 465. Accordingly, the court dismissed the action against those defendants with which the plaintiff had not dealt. *Id.* at 470. In *Gary Plastic*, the plaintiffs instituted a class action consisting of all purchasers of certificates of deposit from Merrill Lynch from May 1982 to the present. 119 F.R.D. at 347. Because the plaintiffs had bought only $100,-000.00 certificates, the court held that the proper class plaintiffs would be purchasers of certificates from Merrill Lynch's $100,000.00 CD program. *Id.*

We find these cases are also distinguishable. Although none of the named plaintiffs purchased policies from Westland, the evidence tends to indicate that Westland and Reserve were essentially the same company. Appellants asserted in the trial court that Westland's principal place of business was in California; however, Westland form letters containing the same alleged misrepresentations as those found in letters from Reserve show the same address in Dallas, Texas, as Reserve. Furthermore, the Westland form letters are signed by the same person who signed the letters from Reserve. Appellees also stated during the hearing on the motion

that both companies have now merged into appellant, Midland National Life Insurance Company.

The letters also indicate that persons holding other types of policies received the same allegedly misleading letter. Thus, although the policy types may differ, the interest and injury of the named plaintiffs is the same as the interest and injury of the other class members. *See Dresser Indus., Inc. v. Snell*, 847 S.W.2d 367, 374 (Tex.App.—El Paso 1993, no writ). In *Dresser*, the defendants also argued the class was overbroad. *Id.* at 376. The El Paso court held that, where class certification is ordered early in a proceeding before supporting facts are fully developed, courts should favor maintenance of the class action because the trial court can later alter, amend, or withdraw certification if it later determines the class is overbroad. *Id.* Based on the evidence before us, we cannot say the class is overbroad. Therefore, we overrule point of error two.

In point of error three, appellants claim the certification order must be reversed because it refers to "attached" Exhibits A–I, but no exhibits are attached. Appellants cite no authority under this point of error.

■ This reference in the order obviously refers to the Exhibits A–I attached to the affidavit of Thomas M. Fulkerson and as exhibits to earlier versions of the order appellees submitted to the trial. No one disputes that the exhibits attached to Fulkerson's affidavit are the exhibits referenced in the order. Because this error does not result from judicial reasoning or determination, we find the failure to attach these exhibits is a clerical error that can be corrected. *Burgess v. Burgess*, 834 S.W.2d 538, 540 (Tex. App.—Houston [1st Dist.] 1992, no writ). This is not reversible error, although we order the trial court to correct this error by attaching the exhibits upon continuation of the trial proceeding. We overrule point of error three.

■ In point of error four, appellants contend the trial court erred in certifying the class because it is administratively unfeasible to ascertain all persons who received rate increase notification letters. In his affidavit,

the Vice President of Reserve testified there are no records indicating which customers were sent rate increase notices and thus, there is no way to determine who is a member of the class. As noted in *Dresser Industries*, a trial court should favor maintenance of a class action if class certification is requested early in a proceeding before full discovery has occurred. 847 S.W.2d at 376. The trial court has authority to amend or withdraw the class determination if, after discovery, the court concludes the class is overbroad. *Id.* Full discovery has not yet occurred in this case. Therefore, at this stage in the litigation, we cannot say the trial court erred in certifying a class to include those persons who received rate increase notification letters. *See id.* We overrule point of error four.

In points of error five, six, and seven, appellants complain appellees did not meet three of the four Rule 42(a) requirements. These include the requirements of commonality, typicality, and whether appellees will fairly and adequately protect the interests of the class. In point of error eight, appellants claim that appellees cannot meet the Rule 42(b)(4) requirement of predominance.

■ The commonality requirement of Rule 42(a) does not mean that all factual and legal questions must be identical. *Dresser Indus.*, 847 S.W.2d at 372. Instead, this requirement means there are questions, which when answered as to one class member, are answered as to all class members. *Chevron U.S.A. Inc. v. Kennedy*, 808 S.W.2d 159, 162 (Tex.App.—El Paso 1991, writ dism'd w.o.j.). Rule 42(b)(4) requires that questions of law or fact common to the members of the class predominate over questions affecting individual members. To determine whether common issues predominate, the court must determine whether common issues will be the object of most of the efforts of the litigants and the court. *Life Ins. Co. of Southwest v. Brister*, 722 S.W.2d 764, 772 (Tex.App.—Fort Worth 1986, no writ). The court must first identify the substantive law issues that will control the outcome of the litigation. *Id.* The court may not consider the substantive merits of the case, and class

proponents are not required to prove a prima facie case to be certified as a class. *Id.*

■ The claims or defenses of the representative parties must also be typical of the claims or defenses of the class. Tex.R.Civ.P. 42(a)(3). The Supreme Court has held the typicality requirement mandates that the representative "possess the same interests and suffer the same injury." *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977). The named representative need not have suffered the same injury as other class members, but there must be a nexus between the representative's injury and the injury of the other class members. *Dresser Indus.*, 847 S.W.2d at 372. The claims and defenses need not be identical, only substantially similar. *Id.*

■ Because appellees have alleged common law and statutory consumer fraud claims, appellants contend these claims are personal to each plaintiff and are unsuitable for class treatment. Specifically, appellants argue commonality does not exist on the issues of whether a misrepresentation existed, whether and to what extent plaintiffs relied, and individual damages. Appellants further claim they will be forced to assert affirmative defenses to each class member's claim and that this will "destroy the class action as a practical, manageable device." Appellants complain this lack of typicality demonstrates appellees cannot adequately and fairly protect the interests of other class members.

Appellees assert four common questions of fact, including (1) ownership of insurance policies issued by appellants, (2) receipt of identical false and fraudulent premium notices from appellants, (3) payment of premiums based on false and fraudulent representations by appellants, and (4) damages resulting from the misrepresentations. The questions of law appellees identify as common to the class involve common law fraud and violations of the Texas Deceptive Trade Practices Act and Texas Insurance Code.

Appellants contend none of the asserted questions of fact advance the common cause of class members because none of these

questions will go to the jury. Instead, appellants argue the jury will decide individual fact issues regarding the varying kinds and degrees of reliance and that varying kinds and degrees of reliance issues are inappropriate for class certification. *Life Ins. Co. of Southwest v. Brister,* 722 S.W.2d 764, 774 (Tex.App.—Fort Worth 1986, no writ).

In a fraud or misrepresentation class action, "there must be a 'well defined community of interest in the questions of law and fact involved'." *Brister,* 722 S.W.2d at 774 (quoting *Vasquez v. Superior Court of San Joaquin,* 4 Cal.3d 800, 94 Cal.Rptr. 796, 801, 484 P.2d 964, 969 (Cal.1971) (emphasis omitted). The *Brister* court offered the following explanation of the kinds of fraud that can qualify for a class action:

> Fraud perpetrated on numerous persons through the use of similar misrepresentations may be suitable for class action; fraud in which there were material variations in the representations made or kinds or degrees of reliance involved are not suitable for class action.

*Brister,* 722 S.W.2d at 774; *Adams v. Reagan,* 791 S.W.2d 284, 289 (Tex.App.—Fort Worth 1990, no writ).

In this case, appellees allege similar misrepresentations. The class includes those persons who received premium change notices similar to those the named representatives received. Reliance issues are also similar here. Appellees contend that, in reliance on the premium change notice reflecting the amount of their annual premium, they paid this amount rather than seeking other insurance.

Appellants list seventeen issues that will allegedly be the focus of discovery and trial,[2] but of these seventeen listed, we find only four crucial to appellees' claims (the existence of a misrepresentation, causation, reliance, and damages). Furthermore, the claims of the parties are typical of the class claims.

Although the burden of proof in establishing the right to maintain a class action is on the proponent, it is not required to make an extensive evidentiary showing in support of its motion. *Clements v. League of United Latin American Citizens,* 800 S.W.2d 948, 952 (Tex.App.—Corpus Christi 1990, no writ). When a court makes a determination of class status at an early stage of the proceeding before full discovery, it should err in favor of maintenance of the class certification since the court may modify the order based on later developments. *Brister,* 722 S.W.2d at 774. The *Brister* court further noted:

> In cases where it appears that the common issues *may* predominate over the individual issues, the most efficient approach for the trial court is to allow class certification at the present time subject to a motion by the defendants after the case has developed to dissolve the class on the grounds that the common questions are not predominant at trial. This approach is prefer-

---

**2.** These alleged individual issues are:

(1) whether the class member received the rate increase notification letter;

(2) under the circumstances of each class member, whether the letter constituted a misrepresentation;

(3) whether each class member relied on the alleged misrepresentations;

(4) what was the class member's understanding of rate increases under the policy;

(5) what was the class member's prior experience with rate increases under this policy;

(6) how many rate increases has each class member experienced;

(7) whether the class member received, reviewed and relied on the invoice;

(8) whether receipt of the invoice clarified any confusion in the notification of rate increase letter;

(9) what were the course of dealings between the policyholder and Reserve or Westland;

(10) whether the policyholder called Reserve or Westland or their agent to clarify this issue, and if yes, what oral representations were made about the rate increase;

(11) whether the class member received an acknowledgment letter;

(12) whether the acknowledgment letter clarified any confusion;

(13) whether the class member renewed his or her insurance after the first semi-annual premium was paid;

(14) whether the alleged misrepresentations were a proximate or producing cause of the class member's damages;

(15) the amount of alleged damages suffered by each class member;

(16) the statute of limitations as applied to each class member's claims;

(17) the defenses of estoppel, waiver and ratification as applied to each class member.

able because of the immediate needs of notification and coherent representation of the class members at the early stages of the litigation.

*Id.* at 775 (citations omitted). *See also Clements,* 800 S.W.2d at 952; *National Gypsum Co. v. Kirbyville School Dist.,* 770 S.W.2d 621, 626 (Tex.App.—Beaumont 1989, writ dism'd. w.o.j.).

In this case, appellees have not fully developed their case. Our review indicates that, at this early stage in the litigation, the allegations and evidence present a reasonable basis for the trial court to find commonality, typicality, and predominance. Because the issues are similar, we also find a reasonable basis for the trial court to rule that appellees can adequately protect the interests of other class members. If further discovery indicates that common issues will not predominate, the trial court may decertify the class. TEX.R.CIV.P. 42(c)(1); *Brister,* 722 S.W.2d at 775.

Appellants also challenge the adequacy of the representatives on another ground. They claim appellee Kirkland's role is seriously compromised because her son is a partner at the law firm of class counsel. However, Kirkland's son is not actually representing the parties involved in the class action.

■ In determining whether a representative is adequate to protect the interests of the class, the trial court must consider the zeal and competence of class counsel and the "willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees." *Adams v. Reagan,* 791 S.W.2d 284, 291 (Tex.App.—Fort Worth 1990, no writ). Federal case law indicates that adequate representation consists of two elements: "(1) it must appear that the representative parties, through their attorneys, will vigorously prosecute the class claims; and (2) there must be an absence of conflict or antagonism between the interests of the named plaintiffs and those of other members of the proposed class." *Id.* (citing *Gibb v. Delta Drilling Co.,* 104 F.R.D. 59, 75 (N.D.Tex.1984)). A conflict that goes to the very subject matter of the litigation is the only type that will defeat a

party's representative status. *Adams,* 791 S.W.2d at 291.

■ In support of their claim that Kirkland is an inadequate representative of the class, appellants cite *Kirby v. Cullinet Software, Inc.,* 116 F.R.D. 303 (D.Mass.1987). In *Kirby,* the son of one of the named parties, Toll, was a partner in the law firm serving as class counsel. *Id.* at 308. The court first noted that federal courts disagree on the question whether a close familial relationship between a proposed class representative and class counsel renders the representation inadequate. *Id.* The court described the reasoning underlying the case law finding a conflict of interest as stated in *Helfand v. Cenco, Inc.,* 80 F.R.D. 1, 7 (N.D.Ill.1977) that the "potential conflict of interest between their representation of the class and the financial benefit which would accrue to a close relative from … [attorneys'] fees generated by these actions disqualifies them as class representatives." The court also noted, however, that in *Fischer v. International Tel. & Tel. Corp.,* 72 F.R.D. 170, the court found a representative adequate even though class counsel was the representative's son because there was no proof the plaintiff would share in any fees recovered by his son. *Kirby,* 116 F.R.D. at 309. After reviewing the case law, the court concluded that Toll had not met his burden of convincing the trial court that he was an adequate representative. *Id.* at 310. Because there were other named plaintiffs, however, the court did not deny certifying the class, but merely deleted Toll as one of the representatives. *Id.*

Although federal decisions regarding class actions are persuasive, they are not binding authority. *RSR Corp. v. Hayes,* 673 S.W.2d 928, 931–32 (Tex.App.—Dallas 1984, writ dism'd). Appellees have not shown that Kirkland will have any interest in a fee recovered by the firm in which her son is a partner. Furthermore, appellees have not shown that Kirkland, through her attorneys, will not vigorously prosecute this action. Thus, we hold the trial court did not abuse its discretion in finding that appellees would fairly and adequately represent the interests of the class. Consequently, we overrule

points of error five through seven. We also overrule point of error eight to the extent that it challenges predominance.

Under point of error eight, appellants claim there has been no showing that a class action would be superior to other available methods. In point of error nine, appellants complain appellees did not meet the requirements of Rule 42(b)(1)(A). This rule requires a showing that prosecution of separate actions by individual members of a class would create a risk of "inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class...." TEX.R.CIV.P. 42(b)(1)(A).

■ In determining whether a class action is superior to other available methods, the court must consider the alternative procedures for disposing of the dispute and compare these to the judicial resources and potential prejudice to absent class members. *Brister,* 722 S.W.2d at 772. The alternatives to class action involve individual adjudication and the availability and practicality of joinder and intervention. *Id.*

■ In *Adams,* the court held that it would be impractical to join 40 or 50 persons as plaintiffs and that repeated litigation of the common issues in individual actions "would be grossly inefficient, costly and a waste of judicial resources." 791 S.W.2d at 292. We believe the same reasoning applies here. Thus, we find no abuse of discretion by the trial court in finding that a class action would be superior to other methods of adjudicating the issues involved in this suit.

■ Rule 42(b)(1)(A) requires a showing that prosecution of separate actions by individual class members would create a risk of inconsistent adjudications. Appellants raise the same argument raised in *Adams,* that federal case law prohibits certification of a class unless the defendant would be subject to incompatible standards of conduct. *See Adams,* 791 S.W.2d at 292. Federal law holds that class certification is appropriate only where the defendant would be subjected to the "possibility of adjudications in which it will be required to follow inconsistent courses

of conduct." *La Mar v. H & B Novelty & Loan Co.,* 489 F.2d 461, 466 (9th Cir.1973). Because appellees seek money damages, appellants complain that there is no possibility of being subjected to incompatible standards of conduct in this case.

In *Adams,* the court recognized that the federal counterpart to Rule 42(b)(1)(A) may be satisfied *only* where a legal quagmire would otherwise result, but held that the better Texas rule would be to permit other considerations to support a 42(b)(1)(A) finding if failing to certify could result in inconsistent or varying results. *Adams,* 791 S.W.2d at 293. The court reasoned that if individual suits are conducted "before different juries and judges and perhaps in some different counties, absolute uniformity of results is not likely, even with the same testimony, facts and issues of law." *Id.* Therefore, the *Adams* court held the requirements of Rule 42(b)(1)(A) were met and the trial court did not abuse its discretion by certifying the class under Rule 42(b)(1)(A). *Id.*

We agree with the reasoning in *Adams* and conclude appellees made a sufficient showing that prosecution of individual actions would create a risk of inconsistent adjudications "which would establish incompatible standards of conduct for the party opposing the class...." TEX.R.CIV.P. 42(b)(1)(A). Consequently, we find no abuse of discretion in the trial court's grant of class certification under Rule 42(b) and we overrule points of error eight and nine.

We affirm the trial court's order certifying a class action and we order the trial court to correct its clerical error by attaching the referenced exhibits to the order.

Before LEE, AMIDEI and EDELMAN, JJ.

EDELMAN, Justice, concurring on rehearing.

I generally concur with the majority opinion that, based on the proceedings thus far, an abuse of discretion has not been shown. However, in connection with point of error one, I do not agree that the term "purchased ... in Texas" is unambiguous. Although that phrase is clear as to Texas residents

who purchased policies from in-state agents, it is less clear to the extent that out-of-state insurance agents or policyholders were involved. Such a class would be better defined by an objective criteria which is apparent on the face of each policy such as a choice of law provision, notification address or other term that readily distinguishes the policyholders who are in the class from those who are not.