**GRAEBEL/HOUSTON MOVERS, INC., Appellant,**

v.

**Terry CHASTAIN and Ina Chastain, Appellees.**

**No. 01–99–00543–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

April 20, 2000.

Rehearing Overruled Sept. 8, 2000.

Bradley L. DeLuca, Houston, for Appellant.

Daniel F. Castaneda, Herbert T. Schwartz, Houston, for Appellee.

Panel consists of Chief Justice SCHNEIDER and Justices ANDELL and DUGGAN.[*]

## OPINION

MICHAEL H. SCHNEIDER, Chief Justice.

This is an interlocutory appeal[1] from an order certifying a class action pursuant to TEX. R. CIV. P. 42. We affirm.

## BACKGROUND

In December 1986, plaintiffs/appellees Terry and Ida Chastain ("the Chastains"), stored their personal property with defendant/appellant Graebel/Houston Movers, Inc. ("Graebel"), while they were assigned overseas by Terry Chastain's employer, ABB Vetco Gray. The Chastains declared the value of their stored items to be $50,-000. While the Chastains were overseas, invoices were sent to ABB Vetco Gray, who paid the charges on the Chastains' behalf. The cost of the storage each month included: (1) a permanent storage charge and (2) "storage insurance." According to the testimony of Terry Chastain, ABB Vetco Gray deducted the storage charges paid from his paycheck.

In January 1995, the Chastains returned from their overseas assignment and requested that Graebel return their property. The Chastains discovered that some of the items entrusted to Graebel were either missing or damaged and filed suit against Graebel in January 1997, alleging claims for negligence, violations of the Deceptive Trade Practices Act[2] and the Texas Insurance Code,[3] breach of duty of good faith and fair dealing, fraud, and negligent/intentional misrepresentations.

During the course of the lawsuit, the Chastains requested a copy of the insurance policy that was purchased with the "storage insurance" charged in each invoice. The Chastains discovered that their property *was* covered by an insurance policy issued by Chubb affiliate, Federal Insurance Company ("the Chubb policy"), but that Graebel was the only insured listed on the policy; none of Graebel's customers, including the Chastains, were listed as additional insureds. Thus, only Graebel was entitled to recover any amounts paid under the policy.[4]

After discovering that there was no policy listing them as an insured, the Chastains filed their fourth amended petition, seeking class action status. The basis of the Chastains' class action claim was that they paid for "storage insurance" each

---

[*] The Honorable Lee Duggan, Jr., retired justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a) (Vernon Supp.2000).

2. TEX. BUS. & COM.CODE ANN. § 17.41 (Vernon 1987).

3. TEX. INS.CODE ANN. § 21.21 (Vernon Supp. 2000).

4. The record shows that Graebel generally had Chubb forward payments directly to the customers, even though Graebel was the only entity legally entitled to recover from Chubb.

month, but that Graebel failed to procure a policy that covered them individually.

The trial court held a hearing on the Chastains' request for class certification, which it subsequently granted. Graebel filed this interlocutory appeal contending that none of the requirements for a class action have been met.

## CLASS ACTIONS

*Standard of review*

■ We review the trial court's determination that a case should be certified as a class action using an abuse of discretion standard. *General Motors Corp. v. Bloyed,* 916 S.W.2d 949, 955 (Tex.1996); *Reserve Life Ins. Co. v. Kirkland,* 917 S.W.2d 836, 839 (Tex.App.—Houston [14th Dist.] 1996, no writ). We will not substitute our judgment for that of the trial court, but will only determine whether the trial court's action was so arbitrary as to exceed the bounds of reasonable discretion. *Dresser Indus., Inc. v. Snell,* 847 S.W.2d 367, 371 (Tex.App.—El Paso 1993, no writ). We view the evidence in a light most favorable to the trial court's action and indulge every presumption favorable to the trial court's ruling. *Kirkland,* 917 S.W.2d at 839; *Dresser,* 847 S.W.2d at 371–72.

*Other applicable principles of law*

■ There is no automatic right to maintain a lawsuit as a class action. *Weatherly v. Deloitte & Touche,* 905 S.W.2d 642, 647 (Tex.App.—Houston [14th Dist.] 1995, writ dism'd w.o.j.). Instead, a trial court may certify a class action if the class proponent satisfies all four requirements of TEX.R. CIV. P. 42(a),[5] and at least one of the requirements under TEX.R. CIV. P. 42(b).[6] *Kirkland,* 917 S.W.2d at 839; *Life Ins. Co. of the Southwest v. Brister,* 722 S.W.2d 764, 770 (Tex.App.—Fort Worth 1986, no writ). Although class proponents must do more than merely allege they fulfill the requirements of rule 42, they are not required to prove a prima facie case or make an extensive evidentiary showing in support of a motion for class certification. *Weatherly,* 905 S.W.2d at 647

■ Trial courts enjoy a broad range of discretion in determining whether to maintain a lawsuit as a class action, but may not consider the substantive merits of the class claims in making a determination. *Dresser,* 847 S.W.2d at 371, 375. Certification is not irreversible, and the trial court may alter, amend, or withdraw class certification at any time before final judgment. *Morgan v. Deere Credit, Inc.,* 889 S.W.2d 360, 365 (Tex.App.—Houston [14th Dist.] 1994, no writ); TEX.R. CIV. P. 42(c)(1).

## CLASS DEFINITION

The certification order in this case defined the class as follows:

> All customers of Graebel/Houston Movers, Inc., its affiliates and subsidiaries, who engaged and paid, or caused to be paid, charges for storage insurance or insurance for storage between January 1, 1986 and April 29, 1999.

■ In its first issue, Graebel contends the trial court's "adoption of a mani-

---

5. TEX.R. CIV. P. 42(a) provides:
   One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

6. The class proponents in this case rely on TEX.R. CIV. P. 42(b)(4), which provides in part:
   > [T]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

festly insufficient class definition" constitutes an abuse of discretion. Implicit in rule 42 is the requirement that the court first determine whether there is an identifiable class, susceptible to a precise definition. *Intratex Gas Co. v. Beeson,* 22 S.W.3d 398, 402–03 (2000). For a class to be sufficiently defined, it must be precise; the class members must be presently ascertainable by reference to objective criteria. *Id.* at 403–04. However, a class definition will not fail merely because every potential class member cannot be identified at the suit's commencement. *Id.* For a class definition to be objective and its members presently ascertainable, the definition cannot require a determination of the merits. *Id.*

■ First, Graebel argues that the class is improperly defined because it potentially includes class members whose claims are barred by the statute of limitations. However, Texas courts have held that the existence of differing affirmative defenses will not prevent class certification. *See Sun Coast Resources, Inc. v. Cooper,* 967 S.W.2d 525, 533 (Tex.App.—Houston [1st Dist.] 1998, pet. dism'd w.o.j.); *Microsoft Corp. v. Manning,* 914 S.W.2d 602, 613 (Tex.App.—Texarkana 1995, writ dism'd).

■ Second, Graebel argues that the class is improperly defined because the use of the term "all customers" requires a case-by-case determination of the identity of the customer. Graebel specifically argues that the Chastains themselves are not "customers" because they did not actually pay the invoices for the storage, their employer did.

We disagree. At the certification hearing, Craig Reineking, a representative of Graebel, testified that he considered the customer to be the transferee or owner of the property stored. He referred to the customers' employers, who paid the in-

voices on behalf of their employees, as the clients. Even though the Chastains, and other employees whose employers paid storage costs as an employee benefit, did not pay the invoices directly, they "caused [the charges] to be paid."[7] As such, the term customer is readily definable, *i.e.,* the person whose belongings are stored and in whose behalf storage payments are made. Graebel can easily compile a list of customers by looking to their own records. In fact, such a list has already been prepared and was included in the record from the certification hearing as Plaintiff's Exhibit 2.

■ Third, Graebel complains that the inclusion of the phrase "its affiliates and subsidiaries" in the class definition is an abuse of discretion because there are no Graebel affiliates and/or subsidiaries that are parties to this lawsuit. However, as we stated earlier, a certification order can be modified at any time before final judgment. If, in fact, no Graebel affiliates or subsidiaries exist, or are not parties to the lawsuit, this clause can be excised from the class definition. Its inclusion at this point in time does not require reversal of the entire certification order.

Fourth, Graebel complains that the class definition is insufficient because it requires a case by case determination of who "engaged and paid, or caused to be paid" charges for storage insurance or insurance for storage. We have already addressed this contention in regard to the definition of "customer." While the Chastains, and others similarly situated, did not pay the storage fees directly, but instead, had the fees deducted from their paychecks or paid by their employer as an employee benefit, they nonetheless "caused [the invoices] to be paid." The "customer" is the person whose goods are stored, and even if the storage fees are paid by another person or entity, the "customer" caused the fees to be paid.

---

**7.** As noted above, Terry Chastain also testified that storage charges were deducted from his

paycheck.

Finally, Graebel complains that the inclusion of the phrase "storage insurance or insurance for storage" in the class definition is improper because it calls for a determination of the merits of the case. In *Intratex v. Beeson*, at 403–05, the trial court certified a class defined as gas producers "whose natural gas was taken by the defendant in quantities less than their ratable proportions." The supreme court held that the class was too indefinite because membership in the class could not be determined without considering the merits of the case, *i.e.*, whether the defendant took nonratably from the class members. *Id.*

Such a situation is not present in this case. The invoices from Graebel that make up the basis of this class action contain a line-item entry entitled "storage insurance." The Court need not determine whether the class members actually purchased insurance; it must only determine whether the invoice contained such a charge. As such, the class members can be determined objectively by merely looking at the invoices. Therefore, the class definition does not require the court to consider the merits of the case in determining the members of the class.

In conclusion, we hold that the class definition is not an abuse of discretion. Accordingly, we overrule Graebel's first issue and all its subparts.

## TYPICALITY

In its second issue, Graebel contends that the Chastains' claims are not typical of those by the other class members. To show "typicality," the representative does not have to show his claims or defenses are identical to those of other class members. *Sun Coast Resources,* 967 S.W.2d at 537. The claims need only be substantially similar. *Id.; Chevron U.S.A., Inc. v. Kennedy,* 808 S.W.2d 159, 162 (Tex.App.—El Paso 1991, writ dism'd w.o.j.). A nexus must exist between the representative's injuries and those of the

other class members. *Dresser,* 847 S.W.2d at 372.

Graebel argues that the Chastains' claims are not typical of other class members because (1) their storage charges were paid for by their employer; (2) they have also asserted a damage claim for their goods in addition to the return of the "premiums" charged for "storage insurance"; and (3) Graebel has a complete defense to the claims of certain class members who have made damage claims that have already been paid.

Again, we see no significance in the argument that the Chastains' fees were actually paid by their employer. If, as they allege, they were charged for insurance they never received, it makes little difference whether they paid for the "insurance" themselves or whether it was given to them by their employer as an employee benefit.

The fact that the Chastains have also asserted a damage claim, along with a claim for the return of the "insurance premiums" will not destroy typicality. In this case, the claims of the Chastains and the other class members are based on the same legal theory: they paid for "insurance" that they did not receive, thus, they are entitled to recover the "premiums" they paid. The Chastains' damages claim is related: because they were not covered by an insurance policy, they were not made whole for the destruction or loss of their property. Although the Chastains have additional damages not asserted by all of the class members, we find a sufficient nexus between their claims and the claims asserted by the class as a whole.

Finally, we again note that, even if Graebel has a defense against certain class members, *i.e.*, release or accord and satisfaction because their damage claims have been paid, typicality is not destroyed. *Sun Coast Resources,* 967 S.W.2d at 537.

Accordingly, we hold that the trial court did not abuse its discretion in finding that the typicality requirement of rule 42 had

been met. We overrule Graebel's second issue.

## NUMEROSITY

In issue three, Graebel contends the trial court erred in certifying the class because there was no showing that the class met the numerosity requirement of rule 42. Graebel argues that there was no showing that any other persons were interested in joining the suit or that their joinder was impractical.

The determination of whether the numerosity requirement is met is not based on numbers alone. *Phillips v. Joint Legis. Com. on Per. & Expenditure Rev.*, 637 F.2d 1014, 1022 (5th Cir.1981). Although the trial court must find that joinder is impractical, there is no mechanical rule for determining when class size reaches that threshold. *Employers Cas. Co. v. Tex. Ass'n of Sch. Bds. Workers' Comp. Self–Ins. Fund,* 886 S.W.2d 470, 476–77 (Tex.App.—Austin 1994, writ dism'd w.o.j.). "The test is whether joinder of all members is practicable in view of the size of the class and such factors as judicial economy, the nature of the action, geographical location of class members, and the likelihood that class members would be unable to prosecute individual lawsuits." *Weatherly,* 905 S.W.2d at 653.

During discovery, Graebel prepared a list of over 1,500 of its customers whose invoices had included a charge for "storage insurance." Graebel argues that even if 1,500 customers had invoices that included a charge for "storage insurance," there is nothing to show that those customers were misled into believing that they would be named as insureds on an individual policy. However, Graebel's argument goes to the merits of the case, which is an inappropriate consideration at the certification stage. *See Intratex,* at 403–04.

Regarding Graebel's argument that no other potential plaintiffs have shown an interest in joining the action, we note that such a perceived disinterest will not defeat certification. Perhaps other potential plaintiffs do not yet know that they are not covered individually by an insurance policy, or that they potentially have a cause of action against Graebel for the return of their "storage insurance" charges. If, in fact, a potential class member is disinterested in participating in the suit, he or she could always return the "opt-out" form that would be included in the notice of the pending class action. *See Phillips,* 637 F.2d 1014.

In light of the 1,500 plus class members that Graebel has been able to identify from its own records, we do not believe that the trial court abused its discretion in finding that a class action was the most efficient way to proceed with this case.

We overrule Graebel's third issue.

## ADEQUATE REPRESENTATION

In Graebel's fourth issue, it contends the trial court erred in certifying the class because the Chastains are not adequate class representatives. The adequacy of representation requirement consists of two elements: (1) it must appear that the representatives, through their attorneys, will vigorously prosecute the class claims, and (2) there must be an absence of antagonism or conflict between the representative's interests and those of the class members. *Sun Coast Resources,* 967 S.W.2d at 538. Factors affecting this determination include the following: (1) counsel's adequacy, (2) potential conflicts of interest, (3) the plaintiff's personal integrity, (4) the representative's familiarity with the litigation and his belief in the grievance's legitimacy, (5) whether the class is unmanageable, based on geographic limitations, and (6) whether the plaintiff can afford to finance the class action. *Id.; Forsyth v. Lake LBJ Inv. Corp.,* 903 S.W.2d 146, 151 (Tex.App.—Austin 1995, writ dism'd w.o.j.) (op. on reh'g).

Graebel argues that the Chastains will be inadequate representatives because

of a potential conflict of interest between their interest and those of the other class members arising out of the Chastains' additional claims for damage to their stored property. Specifically, Graebel argues that some of the other class members have already received payment for their damage claims, and that if the Chastains successfully pursue the class claims, those class members will have to repay the money they have already received in settlement of their damage claims.

We disagree with Graebel's assessment of the potential conflict of interest. The claim for damaged property is separate from the claim for reimbursement of "premiums" charged for nonexistent insurance. Just because some of the class members have already recovered the value of their damaged property does not mean that they could not also recover the portion of their monthly storage bill designated as "storage insurance," if, after further proceedings, they prove their entitlement to such damages. Such a refund of premiums would not be duplicative of the damage claims they may have already settled with Graebel.

Thus, we see no conflict of interest that would render the Chastains inadequate as class representatives. Accordingly, we overrule Graebel's fourth issue.

### COMMONALITY

In its fifth issue, Graebel contends the trial court abused is discretion in certifying the class in the absence of "commonality" in questions of law or fact. The threshold of "commonality" is not high. *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir.1986); *Sun Coast Resources*, 967 S.W.2d at 532. A single issue common to all class members may suffice. *Sun Coast Resources*, 967 S.W.2d at 532. The common issue may be one of law or fact. *Id.* The questions must be such that, when answered as to one class member, they are answered as to all class members. *Id.* The requirement does not mean that all or even most questions are identical.

Rather, the issue of fact or law must inhere in all class members' complaints. *Id.* Therefore, the trial court must first identify the substantive issue controlling the litigation's outcome. The inquiry's purpose is to determine whether the character and nature of the case satisfies the requirements of the class action procedural rule, not to weigh the substantive merits of each class member's claim. *Id.*

Graebel argues that there is no "commonality" in this case because the case is based on the premise that Graebel misrepresented to the class members that they were covered by insurance, when they were not. Graebel argues that several courts have denied class action status because the case was based on misrepresentations or fraud, and the individual class members reliance thereon would have been different. *See* Mary J. Cavins, *Consumer Class Actions Based on Fraud or Misrepresentation*, 53 A.L.R.3d 534 (1974). Graebel also cites several cases holding that claims based on oral, rather than written misrepresentations, cannot be maintained as a class action. *See Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880, 882 (5th Cir.1973); *Soper v. Valone*, 110 F.R.D. 8, 9–10 (W.D.N.Y. 1985). These cases are based on the rationale that oral misrepresentations necessarily require separate, individualized analyses of the alleged misrepresentations.

However, this case is not necessarily based on oral misrepresentation, even though the Chastains contend that Graebel made oral misrepresentations to them. The basis of this lawsuit is Graebel's uniform conduct in billing customers for "storage insurance" and then failing to procure policies that named the customer as an insured. The record shows that over 1,500 customers were billed for "storage insurance," but that Graebel is the only insured on the Chubb policy. Whether such conduct by Graebel entitles the class members to recover the amounts they

were charged for "storage insurance" is the common question of law in this case.[8]

Accordingly, the trial court did not abuse its discretion by finding that the "commonality" requirement had been met. We overrule Graebel's fifth issue.

## RULE 42(b)(4) CLASS MAINTENANCE

In issue six, Graebel argues that even if the elements of numerosity, commonality, typicality, and adequacy of representation are met, the Chastains have failed to demonstrate that the class action falls within one of the categories enumerated in rule 42(b)(4). Rule 42(b)(4) requires the court to determine "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." TEX. R. CIV. P. 42(b)(4).

*Predominance*

■ First, Graebel argues that the common questions of law or fact alleged by the Chastains do not predominate over the individual questions. Again, Graebel argues that because the case is based on whether it made misrepresentations to its customers about insurance coverage, each class member will individually have to prove that he or she relied on the misrepresentations and, thereby, suffered damages.

■ The test for "predominance" is not whether the common issues outnumber the individual issues; rather, it is whether the common issues will be the object of most of the efforts of the court and litigants. *Sun Coast Resources,* 967 S.W.2d at 533. Put another way, if common issues predominate, then a judgment in favor of the class members should decisively settle

the entire controversy, and all that should remain is for other class members to file proofs of their claims. *Id.*

In *Dresser Industries,* the plaintiffs alleged that the defendants, who were well-servicing companies hired to make the plaintiffs' wells more productive, engaged in a scheme to cheat on materials used to service the wells, thereby reducing the amount of recoverable oil. 847 S.W.2d at 371. Each plaintiff claimed that the scheme damaged his royalty interest. *Id.* The court held that the trial court did not abuse its discretion in finding that the common issues; *i.e.,* the scheme to cheat on materials used to service the wells, predominated over the individual issues of false representations, reliance, damages, defenses, and the facts surrounding the defendants' activities over six years at 523 wells. *Id.* at 375.

The predominant issue in this case is not whether Graebel made misrepresentations to each individual class member; the predominant issue is whether Graebel billed and collected premiums for "storage insurance," and then failed to procure such a policy. Although some issues, such as the Chastains' claim for damage to their property, will have to be litigated individually, the trial court did not abuse its discretion in finding that the common issues regarding the refund of "insurance premiums" predominate in this case.

*Superiority and Manageability*

■ Finally, Graebel contends the trial court abused its discretion by finding that class certification was the superior method of adjudicating this suit. A class action is the superior method of adjudication when the benefits of classwide resolution of common issues outweigh difficulties that may arise in class management. *Sun Coast Resources,* 967 S.W.2d at 535; *Weatherly,* 905 S.W.2d at 654. The trial court should consider the alternative pro-

---

8. We express no opinion about whether Graebel was required to procure policies naming their customers as insureds or whether it was sufficient for Graebel to be the only named

insured on a policy that covered the customers' property. Such an issue goes to the merits of the case, and is not an appropriate consideration at the certification stage.

cedures for disposing of the dispute and compare these to the judicial resources and potential prejudice to absent class members involved in pursuing the class action. *Id.* The court may consider whether: (1) class members have an interest in resolving common issues by class action; (2) class members will benefit from discovery already commenced; and (3) the court has invested time and effort in familiarizing itself with the issues in dispute. *Weatherly,* 905 S.W.2d at 654.

The record in this case shows that discovery has commenced. The Chastains have already deposed four corporate representatives of Graebel, and Graebel has produced thousands of pages of documents. Thus, the class members would benefit from the time and effort invested thus far by the trial court and the parties.

Furthermore, Graebel's defense in this case is relatively simple. It argues that even though it billed customers for "storage insurance," rather than using the more precise term "storage valuation," it breached no duties to its customers because, at all times, the customers' property was covered by the Chubb insurance policy. If Graebel is correct, it can forestall the possibility of litigating over 1,500 separate suits on the issue by participating in this class action.

Therefore, we conclude that the trial court did not abuse its discretion in concluding that the requirements of rule 42(b)(4), *i.e.,* predominance and superiority, were met in this case. Accordingly, we overrule Graebel's sixth issue.

## CONCLUSION

We affirm the trial court's interlocutory order certifying this case as a class action.