NUMBER 13-06-629-CV





COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 
 

TEXAS SOUTH RENTALS, INC., A/K/A TEXAS

SOUTH INC. AND THE HERTZ CORPORATION, Appellants,


v.
 


JOSE M. GOMEZ, INDIVIDUALLY AND ON BEHALF

OF ALL OTHERS SIMILARLY SITUATED PERSONS, Appellee.

 


On appeal from the 214th District Court of Nueces County, Texas.


 




O P I N I O N



Before Justices Yañez, Rodriguez, and Benavides


Opinion by Justice Benavides
 This is an interlocutory appeal by appellants, the Hertz Corporation and Texas
South Rentals, Inc., (1) from an order certifying a class of plaintiffs and designating appellee,
Jose M. Gomez, as class representative. Hertz and Texas South have raised numerous
issues challenging the class-certification order. (2) For the following reasons, we reverse the
trial court's order, decertify the class, and remand to the trial court for further proceedings
consistent with this opinion. 

I. Background


 Hertz is a nationally operated rental car company. Texas South is an independently
owned and operated Hertz licensee. As part of these companies' rental agreements, a
customer is presented with three refueling options. First, the companies offer a "fuel
purchase option" or "FPO." Under this option, the companies charge the customer up-front
for a full tank of gas at a specified price per gallon. The customer can then return the car
with less than a full tank of gas without incurring any additional charge. According to
Gomez, the FPO is typically close to the market price for gas in the immediate surrounding
area.

 Second, a customer may refuel the car before returning it to the rental location. This
option requires the customer to return the car with a full tank of gas, and the price the
customer paid for the gas is obviously dependent upon his or her selection of a gas station.

 The dispute in this case centers on the third option. If the customer does not pre-pay for gas under the FPO option and does not return the car with a full tank of gas, the
companies charge a "fuel and service charge" or "FSC" to refuel the car. The price per
gallon of gasoline under this option is higher than the FPO. 

 On January 17, 2003, Gomez rented a car from Texas South. At the time of the
rental, these options were explained in the rental agreement and by the customer service
representative. In fact, Gomez's rental agreement states, in all caps, that "THE PER
GALLON COST OF THE FUEL PURCHASE OPTION WILL ALWAYS BE LOWER THAN
THE FUEL AND SERVICE CHARGE." In Gomez's rental agreement, the price for the FSC
was $3.99 per gallon. 

 Gomez did not purchase the FPO and did not refuel the car before returning it to
Texas South. Texas South, therefore, imposed an FSC of $52.04. Gomez paid the charge
and did not dispute it with Texas South. Over a year later, Gomez filed suit against Hertz
on February 6, 2000. Later, on September 15, 2000, he amended his pleadings to include
Texas South. 

 Gomez alleged claims for common-law fraud, illegal penalty, unconscionability, and
breach of contract. In order to establish liability on Hertz, Gomez alleged several agency
theories of liability, including apparent authority, agency by estoppel, ratification, vice
principal, joint enterprise, conspiracy, and partnership. Gomez pleaded class allegations
and sought to certify a class action of all Texas residents who paid an FSC after February
6, 2000. 

 Hertz and Texas South pleaded numerous affirmative defenses, such as voluntary
payment, waiver, ratification, estoppel, and accord and satisfaction. Additionally, Texas
South asserted that claims by class members who paid an FSC before September 15,
2000 would be barred by the four-year statute of limitations.

 Gomez moved to certify the class. After numerous filings by the parties and a
hearing, the trial court certified a class consisting of "[a]ll Texas residents who were
charged an FSC in Texas after February 6, 2000." Appendix at p. 36. The trial court's
order further clarified the limits of the class definition as follows:

 This is a statewide Class only. Excluded from the foregoing Class are
rentals that commenced anywhere other than at a Hertz location in the State
of Texas; the presiding judge of the court in which this cause is filed, any
other judge assigned to that court or to this cause, the immediate family of
such judge(s), Class counsel, and each of the defendants and their
respective officers, directors, employees, agents, and attorneys. (3)


Id. at pp. 35-36. (4) This interlocutory appeal ensued. Tex. Civ. Prac. & Rem. Code §
51.014(a)(3) (Vernon Supp. 2007). 

II. Standard of Review


 We review an order certifying a class under an abuse of discretion standard. 
Stonebridge Life Ins. Co. v. Pitts, 236 S.W.3d 201, 204-05 (Tex. 2007). However, we must
do so "without indulging every presumption in favor of the trial court's decision." Id. at 205
(citing Henry Schein, Inc. v. Stromboe, 102 S.W.3d 675, 691 (Tex. 2002)). We review the
trial court's order to determine whether the plaintiff demonstrated actual compliance with
Texas Rule of Civil Procedure 42. Id. Compliance may not be presumed, but it must be
apparent from the record and the trial court's order. See id. 

 All class actions must satisfy the four threshold requirements set out in rule 42(a): 
(1) the class must be so numerous that joinder of all members is impracticable; (2) there
must be questions of law or fact common to the class; (3) the claims or defenses of the
representative parties must be typical of the claims or defenses of the class; and (4) the
representative parties must be capable of fairly and adequately protecting the interests of
the class. Tex. R. Civ. P. 42(a); see Sw. Ref. Co. v. Bernal, 22 S.W.3d 425, 433 (Tex.
2000). 

 Additionally, the class must satisfy at least one of the requirements set forth in rule
42(b). Tex. R. Civ. P. 42(b). In this case, Gomez has alleged that he satisfies rule
42(b)(3), which requires that common questions of law or fact predominate over questions
affecting only individual class members and that class treatment is superior to other
methods of adjudication. Id. at R. 42(b)(3). 

 The trial court is required to look beyond the parties' pleadings, investigate the
factual and legal bases for all the claims, and explain in a detailed trial plan how the claims
will proceed as a class. Bernal, 22 S.W.3d at 435. In the absence of such an analysis, it
is nearly impossible for a reviewing court to evaluate whether the class requirements have
been satisfied. State Farm Mut. Auto. Ins. Co. v. Lopez, 156 S.W.3d 550, 556-57 (Tex.
2004). 

III. Predominance Requirement
 

 Hertz and Texas South assail the trial court's findings regarding typicality, adequacy
of representation, predominance of common issues, superiority of the class vehicle, and
the trial plan requirement. Because the predominance requirement is one of the "most
stringent prerequisites to class-action certification," we begin by addressing Hertz and
Texas South's arguments that common issues will not predominate in this case. 
Stonebridge Life Ins. Co., 236 S.W.3d at 205. 

 A class may be certified under Texas Rule of Civil Procedure 42(b)(3) when "the
questions of law or fact common to the members of the class predominate over any
questions affecting only individual members . . . ." Tex. R. Civ. P. 42(b)(3). Stated
conversely, a class cannot be certified under this provision when "complex and diverse
individual issues would overwhelm or confuse a jury or severely compromise a party's
ability to present otherwise viable claims or defenses." Stonebridge Life Ins. Co., 236
S.W.3d at 205 (citing Henry Schein, Inc., 102 S.W.3d at 690).

 Predominance of common issues, as with all prerequisites to certification, must be
rigorously examined by the trial court. Henry Schein, Inc., 102 S.W.3d at 694; Bernal, 22
S.W.3d at 434. "The test for predominance is not whether common issues outnumber
uncommon issues but . . . whether common or individual issues will be the object of most
of the efforts of the litigants and the court." Bernal, 22 S.W.3d at 434 (quoting Central
Power & Light Co. v. City of San Juan, 962 S.W.2d 602, 610 (Tex. App.-Corpus Christi
1998, pet. dism'd w.o.j.)). The trial court must decide at the outset that any individual
issues can be determined in a "manageable, time-efficient and fair manner"; otherwise,
certification is improper. Stonebridge Life Ins. Co., 236 S.W.3d at 205. 

 In conducting this inquiry, the trial court must identify the substantive issues
involved, assess which of those issues will predominate, and determine if the
predominating issues are those common to the class. Id. at 205; Bernal, 22 S.W.3d at
434. "Ideally, 'a judgment in favor of the class members should decisively settle the entire
controversy, and all that should remain is for other members of the class to file proof of
their claim.'" Exxon Mobil Corp. v. Gill, 221 S.W.3d 841, 856 (Tex. App.-Corpus Christi
2007, pet. filed) (quoting Bernal, 22 S.W.3d at 434). 

 The trial court analyzed Gomez's claims and found that there are no individual
issues with respect to any of the claims. Appendix at pp. 16, 19, 21, 22, 24, 26, 30, 34-35. 
Thus it found that common issues would predominate. Both Hertz and Texas South
advance several arguments against this finding. First, they argue that the class fraud
claims demand an individualized inquiry into whether the alleged misrepresentations were
material to the class members and whether the class members justifiably relied on the
alleged misrepresentations. Second, they argue that the class claims are subject to the
voluntary payment defense, which requires an individualized inquiry into the class
members' knowledge. Third, they argue that to the extent the class's breach of contract
and U.C.C. claims are based on unconscionability, those claims raise individual issues of
the class members' knowledge, ability, experience, and capacity. Finally, Texas South
raises an additional argument, which Hertz has not argued in its briefs. Texas South
argues that consumer status is required for the class claims under the U.C.C., and that this
inquiry will raise insurmountable individual issues. (5) 

A. Fraud Claim

 The elements of a fraud or fraudulent concealment claim are: (1) the speaker made
a material representation; (2) the representation is false; (3) the speaker knew the
representation was false or made it recklessly without any knowledge of the truth; (4) the
speaker made the representation with the intent that the other party act upon it; (5) the
party acted in reliance on the representation; and (6) the relying party suffered an injury. 
See Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 47
(Tex. 1998); Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 181 (Tex. 1997). 
Hertz and Texas South argue that Gomez's fraud claims will require individualized inquiry
into whether the alleged misrepresentations were material to the class members and
whether the class members relied on the alleged misrepresentations. Accordingly, they
argue that individualized issues will predominate, as they will have to question each class
member regarding his or her knowledge and understanding of the FSC. 

 Gomez counters, and the trial court agreed, that materiality and reliance can be
determined on a class-wide basis. Specifically, the trial court held:

 This is a case where Plaintiff's claim for fraudulent misrepresentation, as
will be demonstrated in the proposed Trial Plan, is subject to Class-wide
treatment, because it is based upon a uniform, written misrepresentation,
and reliance is evidenced by the act of paying that express charge at the
conclusion of the rental.


Appendix at p. 19. The trial court cited Henry Schein, Inc. v. Stromboe, where the Texas
Supreme Court stated in dicta that class-wide proof of reliance could be possible in a fraud
claim where class-wide evidence existed. 102 S.W.3d at 693-94. The trial court
concluded that class-wide evidence existed here because the "act of paying demonstrates
that [the customers] are relying upon the charge as what it states: A charge for fuel and for
service." Appendix at p. 19. The trial court referred to this as the "invoice theory of
reliance." Id. at p. 21.

 The analysis of these issues necessarily requires a discussion of the Texas
Supreme Court's decision in Schein. 102 S.W.3d at 693-94. In Schein, the trial court
certified a class of consumers who purchased computer software. Id. at 678. The
purchasers alleged that the software company falsely represented that the software could
perform certain tasks and was suitable for the purchasers' use in their dental practices. 
Id. at 679-80. The software company argued that the class should not be certified
because individual reliance issues would predominate. Id. at 693.

 After noting that several of the purchasers' claims (6)
 required reliance as an element
of proof, the supreme court reiterated its holding in Southwest Refining Co. v. Bernal that
the class vehicle is not supposed to enhance or diminish a party's ability to present the
substantive merits of its case:

 [t]he class action is a procedural device intended to advance judicial
economy by trying claims together that lend themselves to collective
treatment. It is not meant to alter the parties' burdens of proof, right to a jury
trial, or the substantive prerequisites to recovery under a given tort.
Procedural devices may "not be construed to enlarge or diminish any
substantive rights or obligations of any parties to any civil action." Although
a goal of our system is to resolve lawsuits with "great expedition and dispatch
and at the least expense," the supreme objective of the courts is "to obtain
a just, fair, equitable and impartial adjudication of the rights of litigants under
established principles of substantive law." This means that "convenience
and economy must yield to a paramount concern for a fair and impartial trial." 
And basic to the right to a fair trial--indeed, basic to the very essence of the
adversarial process--is that each party have the opportunity to adequately
and vigorously present any material claims and defenses.


Id. at 693 (quoting Bernal, 22 S.W.3d at 437) (internal citations omitted). In other words,
class plaintiffs must be held to the same standards of proof as an individual plaintiff. Id.

 However, the supreme court's next statement is the spark that ignited the instant
dispute between the parties in this case. The supreme court clarified that it was not
holding that a fraud class could never be certified due to individual reliance issues. Id. 
Rather, the court suggested the possibility that a class representative could produce class-wide evidence of reliance, satisfying the predominance requirement: 

 This does not mean, of course, that reliance or other elements of their
causes of action cannot be proved class-wide with evidence generally
applicable to all class members; class-wide proof is possible when
class-wide evidence exists. But evidence insufficient to prove reliance in a
suit by an individual does not become sufficient in a class action simply
because there are more plaintiffs. Inescapably individual differences cannot
be concealed in a throng. The procedural device of a class action eliminates
the necessity of adducing the same evidence over and over again in a
multitude of individual actions; it does not lessen the quality of evidence
required in an individual action or relax substantive burdens of proof. If a
plaintiff could prove reliance in an individual action with the same evidence
offered to show class-wide reliance, then the issue is one of law and fact
common to the class. The question the court must decide before certifying
a class, after rigorous analysis and not merely a lick and a prayer, is whether
the plaintiffs have demonstrated that they can meet their burden of proof in
such a way that common issues predominate over individual ones.

Id. at 693-94 (emphasis added). 

 Gomez seizes upon this language and argues that he presented class-wide
evidence of reliance by merely showing that Hertz and Texas South customers were
charged the FSC. In other words, because Hertz and Texas South misrepresented that
the FSC was for "fuel and service" and did not disclose the hidden profit element, and the
class members paid for the FSC without knowing what it truly was, the class members
necessarily relied on the misrepresentation. Gomez reasons, therefore, that if reliance is
established as to Gomez, it is established as to the entire class. We disagree that this is
the rare case the supreme court envisioned by its statements in Schein.

 In Schein, the purchasers argued that they presented class-wide evidence of
reliance. Id. at 694. The court looked to the record and determined that although there
was "evidence that Schein wanted purchasers to rely on its advertisements and other
representations about its software products," there was "no evidence that purchasers
actually did rely on Schein's statements so uniformly that common issues of reliance
predominate over individual issues." Id. In doing so, the court placed the burden on the
plaintiff to bring forward a record demonstrating that the trial court had complied with the
requirements for certifying a class under rule 42(b)(4). Id. 

 Furthermore, the court noted that the record actually supported the opposite of the
purchasers' arguments--testimony appeared in the record showing that some of the
purchasers relied on recommendations by colleagues in purchasing the software rather
than on Schein's representations. Id. Accordingly, the court held that the purchasers
failed to demonstrate compliance with the predominance requirement in rule 42(b)(4). Id. 
 Since the supreme court's decision in Schein, we have addressed class claims
involving reliance elements on two separate occasions. (7) In Ford Motor Co. v. Ocanas, we
reviewed an order certifying a class of plaintiffs who purchased Ford F-150 trucks with an
optional towing package. 138 S.W.3d 447, 449 (Tex. App.-Corpus Christi 2004, no pet.). 
The F-150 with a towing package was marketed as having a larger radiator than those
without the towing package, but due to a manufacturing error, the larger radiator was not
included. Id. The class alleged "laundry list" violations of the Texas Deceptive Trade
Practices Act ("DTPA"), which required reliance as an element of proof. Id. at 453. 

 After summarizing the holding in Schein, we focused particularly on Schein's
determination that the plaintiffs had not produced any class-wide evidence that purchasers
actually relied on the defendants' misrepresentations in a uniform manner. Id. (citing
Henry Schein, Inc., 102 S.W.3d at 693). For those same reasons, we held that the trial
court improperly certified the class of F-150 purchasers:

 Like the plaintiffs in Henry Schein, Inc., appellees pleaded breach of express
and [implied] warranties and DTPA "laundry list" violations which require
each class member to prove reliance as a prerequisite to recovery. Further,
although there is evidence that appellant intended for customers to rely on
representations that F-150s with a Class III towing package would come with
larger radiators, "there is no evidence that purchasers actually did rely" on
appellant's statements "so uniformly that common issues of reliance
predominate over individual issues." The supreme court noted that it is
possible to certify a class where reliance is a required element of proof if the
plaintiffs can "prove reliance in an individual action with the same proof
offered to show class-wide reliance." However, appellee did not meet this
burden.

Id. (citations omitted). 

 Later, in Fidelity & Guaranty Life Insurance Co. v. Pina, we reviewed an order
certifying a consumer fraud class. 165 S.W.3d 416, 418 (Tex. App.-Corpus Christi 2005,
no pet.). There, the consumers purchased annuities that paid a high interest rate on
deposits into the annuities. Id. The consumers alleged that the defendant failed to
disclose that a lower interest rate would apply to payments the consumers made into the
annuities after the first year of ownership. Id. at 419. Addressing the reliance element of
the consumers' DTPA and fraud claims, we noted the difficulty of establishing reliance in
a group setting:

 

 Reliance is a thought process or one step in a larger thought process; . . . [it] can
be shown only by demonstrating the person's thought processes in reaching the decision.
Proof of reliance or lack of reliance necessarily requires an individualized determination
because, under all the same facts and circumstances, one person may have relied on the
misrepresentation in reaching a decision while another did not rely on it in reaching the
same decision.


Id. at 423 (quoting Grant Thornton, L.L.P. v. Suntrust Bank, 133 S.W.3d 342, 355 (Tex.
App.-Dallas 2004, pet. filed) (emphasis added)). After crediting Schein's invitation to
establish reliance on a class-wide basis, we relied on our earlier holding in Ford and held
that the consumers had not put on class-wide evidence of reliance. Id. at 424. Although
each of the named plaintiffs testified that they relied on the high interest rate applicable in
the first year of their contracts, none of the named plaintiffs indicated "how or whether other
members of the class may have weighed the importance of the new money interest rate
in making their investment decision." Id. Accordingly, the plaintiffs did not produce any
evidence of class-wide reliance. Id.

 We noted that although the supreme court in Schein "did not entirely preclude class
actions in which reliance was an issue, . . . it did make such cases a near-impossibility." 
Id. at 423. We questioned whether given the individualized nature of reliance, any class
action could ever be certifiable under Schein, and we noted that from the time of the
Schein decision in 2002 to the time we decided Fidelity in 2005, no Texas court had
"encountered a situation in which class-wide proof of reliance could be found." Id. at 424-25. The same still holds true--no court since Schein has ever found evidence of class-wide reliance.

 Like the plaintiffs in Schein, Ford Motor Co., and Fidelity, Gomez has failed to point
us to any evidence in the record demonstrating that the class as a whole relied on
representations by Hertz and Texas South that the FSC constituted only a charge for fuel
and service. In fact, Gomez does not point to any evidence in the record demonstrating
that he actually relied on a belief that the FSC was only for fuel and service. Moreover,
under the facts of this case, it is not hard to imagine how individual issues of reliance could
arise. There are numerous circumstances in which a customer might choose the
convenience of the FSC regardless of his or her knowledge of the FSC's composition. 
Accordingly, "[i]t is thus clear that answering the questions of materiality and reliance as
to one plaintiff does not answer the same question as to other putative class members." 
Peltier Enters., Inc. v. Hilton, 51 S.W.3d 616, 623 (Tex. App.-Tyler 2000, pet. denied). 
Gomez failed in his burden to show that reliance issues will not predominate in the
litigation. 

 Nevertheless, Gomez directs us to pre-Schein cases that he argues demonstrate
that class-wide evidence exists in this case due to the mere fact that Hertz and Texas
South's customers paid the FSC. First, he cites Graebel/Houston Movers, Inc. v. Chastain,
26 S.W.3d 24, 34 (Tex. App.-Houston [1st Dist.] 2000, pet. dism'd w.o.j.). In Chastain, the
plaintiffs stored their property with a company while they were overseas. Id. at 28. The
plaintiffs' contract said that the defendant company had purchased insurance for the
property, and the plaintiffs were charged for the insurance. Id. As it turned out, the
plaintiffs were not named as insureds on the policies, and they brought a class action for
fraud. Id. The trial court certified the class, and the court of appeals affirmed. Id. at 35.

 On appeal, the defendant argued that reliance issues would predominate at trial. 
Id. at 34. The court of appeals disagreed and held that common issues predominated,
making the following statements: 

 The predominant issue in this case is not whether Graebel made
misrepresentations to each individual class member; the predominant issue
is whether Graebel billed and collected premiums for "storage insurance,"
and then failed to procure such a policy. Although some issues, such as the
Chastains' claim for damage to their property, will have to be litigated
individually, the trial court did not abuse its discretion in finding that the
common issues regarding the refund of "insurance premiums" predominate
in this case. 

Id.

 Additionally, Gomez cites to Alford Chevrolet-Geo v. Jones, 91 S.W.3d 396 (Tex.
App.-Texarkana 2002, pet. denied). In that case, the plaintiffs brought a fraud class action
against several car dealerships that were charging what they called a "vehicle inventory
tax." Id. at 399. Really, the tax was imposed on the dealerships, not the customers, but
the dealerships were allegedly passing the taxes through to the customers and
representing that the customers, not the dealers, owed the taxes. Id. The trial court
certified the fraud class, id., and the dealers argued on appeal that common issues did not
predominate. Id. at 404-05.

 The Texarkana Court of Appeals held that reliance could be proven on a class-wide
basis by the mere fact that the customers paid the tax billed by the dealerships: 

 The Dealers also take the position that at the least each class member must
demonstrate he or she relied on the misrepresentation. The allegations are
that the consumers paid a tax they did not owe because they were billed for
the tax by the Dealers. That alone is an allegation of reliance. 

Id. at 405. The court of appeals then reviewed and relied on the Chastain decision,
concluding that in Chastain, the charge itself was sufficient to satisfy the certification
requirements. Id. at 406. 

 Although Chastain and Alford appear to hold that payment alone sufficed to prove
reliance, (8) we decline to follow them. First, the Chastain opinion glossed over the reliance
and materiality elements. Chastain, 26 S.W.3d at 34. In Chastain, the court identified the
representation and the later charge for insurance as the "predominant issue," the court did
not actually address materiality and reliance and the effect those elements had on
certifying the class. Id. The Texarkana Court of Appeals in Alford read Chastain as
holding that mere payment by the plaintiffs showed reliance, but we do not read it as
definitively resolving the questions of whether materiality and reliance issues would
predominate. Alford, 91 S.W.3d at 406. Moreover, we have located no other Texas case
that has expressly recognized an "invoice theory" of reliance, as was apparently adopted
in Alford. 

 More importantly, both these cases were decided before Schein. Although these
cases were decided before Schein, Schein did not cite to either case as exemplifying class-wide evidence of reliance. In fact, Schein did not cite to any cases as examples of when
class-wide reliance had existed. Henry Schein, Inc., 102 S.W.3d at 694-95. Because
there is no evidence in this case of class-wide reliance and materiality, the trial court
abused its discretion in determining that individual issues will not predominate.

B. Voluntary Payment Defense

 Hertz and Texas South attack the trial court's evaluation of the voluntary payment
defense and its application to the class claims. Here, the trial court certified the following
claims: (1) an unconscionability claim, Tex. Bus. & Comm. Code Ann. § 2A.108 (Vernon
1994) ("U.C.C. § 2A.108"); (2) an illegal penalty claim, id. § 2A.504 (Vernon 1994) ("U.C.C.
§ 2A.504"); (3) breach of contract; and (4) fraud. Hertz and Texas South argue that the
U.C.C. and breach of contract claims are subject to the voluntary payment defense, which
bars the recovery of money voluntarily paid "with full knowledge of all the facts and without
fraud, deception, duress, or coercion." BMG Direct Mktg., Inc. v. Peake, 178 S.W.3d 763,
765 (Tex. 2005). Hertz and Texas South argue that this defense bars the class claims as
a matter of law or, at the least, will require an individual evaluation of the facts as they
relate to each unnamed class member. In particular, Hertz and Texas South argue that
each class member will have to be questioned about whether he or she had "full
knowledge of all the facts." 


 Gomez, on the other hand, argues that his allegation of fraud defeats the voluntary
payment defense as a matter of law. He argues that he did not have full knowledge of the
facts because the "fuel and service charge" label is misleading, although he admits that he
knew what the FSC was and how much it cost relative to his other re-fueling options. Hertz
and Texas South respond that the allegation of fraud itself involves several individual
issues, including materiality of the alleged representation and the customer's reliance on
the representation.

 The trial court determined that the voluntary payment rule "is not supported in
regards to Plaintiff's claims as asserted, or under controlling authority." Appendix at p. 9. 
The trial court held that the voluntary payment defense would not likely apply to the claims
because Gomez alleged fraud and because Gomez did not receive "full knowledge" of the
facts until discovery was completed. Id. at p. 10. Finally, the trial court held that if the
defense applied, it would apply to all class members and could be handled on a class-wide
basis. Id. at p. 9. The trial plan does not specifically state how these issues could be
handled class-wide, except to reiterate that the inquiry would apply to the class as a whole. 
 Id. at pp. 32-33. 

 Hertz and Texas South argue that (1) the trial court's determination that the defense
does not apply was erroneous; (2) the defense cannot be applied on a class-wide basis;
(3) the trial court deprived them of their ability to present the defense at all by concluding
that the defense can be applied on a class-wide basis; and (4) individual issues will
predominate. Because Hertz and Texas South attack the trial court's analysis of the
underlying law, we must first examine the class claims and the contours of the voluntary
payment defense. Exxon Mobil Corp., 221 S.W.3d at 847-48. 

 1. UCC Illegal Penalty Claim

 The Texas Supreme Court recently addressed the voluntary payment defense in
BMG Direct Mktg., 178 S.W.3d at 765. In that case, BMG's customers were charged late
fees after they failed to timely pay for compact disks in accordance with their agreements
with BMG. Id. at 765. Peake, a BMG customer, brought a class action alleging that the
late fees were illegal penalties that did not "reasonably forecast BMG's actual damages
resulting from customers' late payments." Id. at 766. The trial court certified a class
consisting of "all present and former BMG club members in Texas who had paid BMG late
fees since May 16, 1998." Id. 

 BMG argued that the voluntary payment defense applied to each customer's claim
and caused individual issues to predominate. Id. The trial court, however, held that it was
"unlikely" the voluntary-payment rule would apply because the "rule is equitable and 'need
not be applied where the rationale for its existence does not exist.'" Id. Additionally, the
trial court held that the defense did not raise individual issues and could be determined on
a class-wide basis. Id. 

 On appeal, the Texas Supreme Court explained that under the voluntary payment
defense, "'[m]oney voluntarily paid on a claim of right, with full knowledge of all the facts,
in the absence of fraud, deception, duress, or compulsion, cannot be recovered back
merely because the party at the time of payment was ignorant of or mistook the law as to
his liability.'" Id. at 768 (quoting Pennell v. United Ins. Co., 150 Tex. 541, 243 S.W.2d 572,
576 (1951)). Peake argued that because BMG did not disclose how the late fees were
calculated, he did not pay the late fees with "full knowledge of all the facts"; therefore, the
defense was not implicated. Id. at 773. BMG argued that because it disclosed the late fee
and the circumstances under which the fees would be imposed, the customers had "full
knowledge of the facts" sufficient to implicate the defense. Id.

 The Texas Supreme Court agreed with BMG that "knowledge of a late fee's amount
and the circumstances under which it will be imposed is sufficient to charge one with 'full
knowledge of the facts' for purposes of the voluntary-payment rule's application." Id. 
Accordingly, the trial court erred in determining that the defense likely did not apply to
Peake's illegal penalty claim. Id. at 773-74. 

 We see no distinction between BMG and the present case--although Gomez claims
that Hertz and Texas South failed to disclose that the FSC had a hidden profit component,
Hertz and Texas South disclosed the FSC and the circumstances under which it would
apply. Thus, Gomez's knowledge was sufficient to trigger the defense's application to his
illegal penalty claim. See id. But that does not end the inquiry here.

 Hertz and Texas South argue that the "full knowledge" requirement will involve such
an individualized inquiry that common questions do not predominate. We disagree. That
is not what BMG held. Id. In fact, BMG conceded that the "knowledge" requirement could
be established on a class-wide basis. Id. Hertz and Texas South can invoke the defense
by merely proving that all their rental contracts contained a disclosure of the FSC and the
circumstances under which it would apply. Id. The "thornier" issue, as the supreme
court put it, is whether the defense can be defeated by Gomez's allegation of fraud. Id. 
The supreme court recognized in BMG that the traditional exceptions to the voluntary
payment defense--fraud, duress, deception, and coercion--still apply. Id. at 776. In BMG,
Peake argued that the late fees were not a reasonable estimation of the damages BMG
suffered as a result of the customers' late payments. Id. at 775-76. The court
acknowledged that for purposes of the "full knowledge" requirement to invoke the rule, it
would not make sense to require companies to disclose the method of calculating a
particular charge. Id. at 773. Thus, the allegation of an illegal penalty alone would not
preclude "full knowledge" sufficient to invoke the rule. Id. The court also held that the
illegal penalty allegation, by itself, did not rise to the level of fraud to defeat the application
of the voluntary payment defense. Id. at 775. The court was careful, however, to note that
"the late fees were a set amount per month, and there is no allegation of mistake or fraud
as to their calculation." Id. Because the court could not determine on the record in BMG
whether Peake alleged any other reason that payment of the charge was involuntary, it
remanded to the trial court to consider how the defense affected the ability to certify the
class and how the claims could be tried. Id. at 778. 

 In contrast, Gomez has alleged that the label attached to the charge in this case,
"Fuel and Service Charge," was misleading and fraudulent because it did not reveal the
true nature of the charge. In other words, Gomez has alleged fraud as to the calculation
of the charge. This is precisely the type of fraud allegation that BMG recognized was not
present in that case. Id. at 775. Gomez argues that by alleging that Hertz and Texas
South fraudulently misrepresented the purpose of the FSC, which was really a hidden profit
stream, he has defeated the application of the voluntary payment defense as a matter of
law. The trial court agreed with this argument. Appendix at p. 10. 

 Hertz and Texas South, on the other hand, argue that a mere allegation of fraud will
not defeat the defense as a matter of law. They argue that to defeat the defense, Gomez
will have to bring forward evidence of fraud, which includes proving that the purpose for the
FSC and its calculation was "material" to the customers and that they relied on the alleged
misrepresentations. 

 Gomez cites BMG to support his argument. However, BMG did not hold that the
mere allegation of fraud will defeat the voluntary payment defense. See BMG Direct Mktg.,
Inc., 178 S.W.3d at 775. Rather, the supreme court noted that there was no allegation of
fraud in BMG. Id. Not only is Gomez's argument contrary to BMG, it ignores several
Texas cases that have held otherwise. 

 Texas courts have consistently held that once the voluntary payment defense is
invoked, the plaintiff must plead and prove one of the exceptions to the defense to defeat
its application. See Spring Branch Bank v. Mengden, 628 S.W.2d 130, 135-37 (Tex.
App.-Houston [14th Dist.] 1981, writ ref'd n.r.e.); Am. Cas. & Life Ins. Co. v. Boyd, 394
S.W.2d 685, 689-91 (Tex. Civ. App.-Tyler 1965, no writ); see also Gaither v. Lindsey, 37
Tex. Civ. App. 149, 83 S.W. 225, 226 (Tex. Civ. App. 1904, no writ). If the plaintiff alleges
fraud, he or she must prove materiality and reliance as elements of the fraud in order to
defeat the voluntary payment defense. Gaither, 83 S.W. at 226 ("If, however, appellant in
any way represented himself to be a practicing physician, when he was not authorized to
practice medicine, and appellee was thereby induced to employ and pay him for
professional services, he could recover back the money so paid.").

 Hertz and Texas South are correct that Gomez's fraud allegation will require him to
prove the elements of materiality and reliance in order to defeat their voluntary payment
defense. As we held above, fraud cannot be determined on a class-wide basis in this
case, and individual issues will, therefore, predominate. Accordingly, the trial court abused
its discretion in certifying Gomez's U.C.C. illegal penalty claims.


 2. Breach of Contract Claim

 To recover for breach of contract, a claimant must prove that: (1) there is a valid,
enforceable contract between the parties; (2) the plaintiff performed as required under the
contract; (3) the defendant breached the contract; and (4) the defendant's breach caused
the claimant injury. Exxon Mobil Corp., 221 S.W.3d at 853 (citing Valero Mktg. & Supply
Co. v. Kalama, Int'l, 51 S.W.3d 345, 351 (Tex. App.-Houston [1st Dist.] 2001, no pet.)). 
The parties apparently disagree about the factual theory supporting this claim. Texas
South characterizes this claim as follows: "As a result of the FSC being an illegal and
unenforceable penalty under the Texas UCC, the stated daily rental rate was inflated in
breach of contract." Texas South Appellant's Brief at p. 8. Hertz, on the other hand,
asserts that the breach of contract claim is identical to Gomez's U.C.C. unconscionability
claim. Hertz Corp. Appellant's Brief at p. 7. 

 However, neither of these interpretations is supported by Gomez's pleadings. See
Exxon Mobile Corp., 221 S.W.3d at 848-49 (rejecting Exxon's characterization of the
plaintiffs' contract claims as disguised fraud claims). Rather, the pleadings demonstrate
an entirely different factual theory based solely in general contract principles: Gomez
alleges that a customer contracts to rent a car at a specific daily rate, but when the FSC
is included, the rental rate is actually inflated, making the FSC a breach of the daily rate
provision in the contract. This allegation does not depend on whether the FSC is a
reasonable estimation of the harm suffered by Hertz and Texas South or on whether the
charge is unconscionable. Rather, it requires a mere interpretation of the contractual
terms. 


 In fact, the trial court recognized the claim as distinct from Gomez's U.C.C. claims
in its certification order. In the certification order, the trial court found the following
common issues:

 (a) Whether the FSC is unconscionable and therefore unenforceable;


 (b) Whether the FSC violates TX-UCC § 2A-504;


 (c) Whether the Defendants breached their contracts by charging the
FSC;


 (d) Whether Defendants fraudulently misrepresented the FSC; and


 (e) Whether Plaintiff and members of the Plaintiff Class are entitled to
damages, and if so, what is the proper measure of such damages.


Appendix at p. 5. The trial court clearly contemplated that Gomez's U.C.C. claims were
distinct from his standard breach of contract claims. 

 This Court recently held that the voluntary payment defense does not apply to a
simple breach of contract action. Exxon Mobil Corp., 221 S.W.3d at 857; see also BMG
Direct Mktg., Inc., 178 S.W.3d at 775 ("It is true that, to the extent the subject matter of
Peake's claims is covered by the parties' contract, the rule would not apply."). "The rule
is a defense to claims asserting unjust enrichment, not to claims for breach of contract."
Exxon Mobil Corp., 221 S.W.3d at 857 (citing BMG Direct Mktg., Inc. 178 S.W.3d at 775). 
As the supreme court explained, an adequate legal remedy prevents the application of
unjust enrichment and the voluntary payment defense. BMG Direct Mktg., Inc., 178
S.W.3d at 770 (citing Fortune Prod. Co. v. Conoco, Inc., 52 S.W.3d 671, 684 (Tex. 2000)
for proposition that unjust enrichment does not apply when an express contract governs
the dispute). Accordingly, the trial court did not abuse its discretion in determining that the
voluntary payment defense would not apply to Gomez's breach of contract claim. 

C. Unconscionability Claim

 Gomez makes his unconscionability claim under U.C.C. 2A.108, which provides, in
relevant part:

 (a) If the court as a matter of law finds a lease contract or any clause of
a lease contract to have been unconscionable at the time it was
made, the court may refuse to enforce the lease contract, or it may
enforce the remainder of the lease contract without the
unconscionable clause, or it may so limit the application of any
unconscionable clause as to avoid any unconscionable result.

 

 (b) With respect to a consumer lease, if the court as a matter of law finds
that a lease contract or any clause of a lease contract has been
induced by unconscionable conduct or that unconscionable conduct
has occurred in the collection of a claim arising from a lease contract,
the court may grant appropriate relief.


Tex. Bus. & Comm. Code Ann. § 2A.108. Gomez alleged that the FSC is an
unconscionable clause that takes advantage of the plaintiff class to a grossly unfair degree,
adopting the standard definition of unconscionability recognized by Texas law. See id. cmt.
("Subsections (1) and (3) of this section apply the concept of unconscionability reflected
in the provisions of Section 2-302 to leases."); id. § 2.302 cmt. ("The basic test is whether,
in the light of the general commercial background and the commercial needs of the
particular trade or case, the clauses involved are so one-sided as to be unconscionable
under the circumstances existing at the time of the making of the contract."); see also
Gallardo v. TCI Cablevision of Tex., Inc., No. 13-02-460-CV, 2004 WL 1932662, at *3 (Tex.
App.-Corpus Christi Aug. 31, 2004, no pet.) (mem. op.) (defining unconscionability under
U.C.C. as "an act or practice which, to a consumer's detriment, takes advantage of the lack
of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree.");
Peltier, 51 S.W.3d at 623-64. 


 The trial court held that no individual issues would be involved in the analysis of this
claim: 

 Plaintiff's UCC and contract Class claims are based upon the standard,
uniform written rental agreement signed by each Class member and the
attendant FSC. If plaintiff has a UCC or contract cause of action against
Hertz for over [sic] the FSC, then every member of the Class does. If Hertz
violated the applicable law in charging its FSC as to one Class member, it
violated it as to all-in exactly the same manner. The finite and
straightforward nature of Plaintiff's contract claims thereby clearly
demonstrates the feasibility and practicability of submitting this case to a
single jury. Not only will common issues predominate [at] the trial of this
case, there are no individualized questions left to submit to the trier of fact
as to the contract claims. Neither individual intent, nor individual knowledge,
nor individual reliance are elements of, or prerequisites to, Plaintiff's UCC
and contract Class claims. The same is true as to the UCC claims, which will
be determined by the Court as set forth in the Trial Plan.


Appendix at pp. 15-16 (citations omitted).

 Hertz and Texas South appear to argue that Gomez's unconscionability claim under
the U.C.C. is also barred by the voluntary payment defense, but they do not specifically
brief whether this defense has ever been applied to an unconscionability claim. We have
not located any Texas cases applying the defense in this manner. However, we need not
decide this issue because the unconscionability claim, even in the absence of the voluntary
payment defense, raises numerous individual issues that would cause the class
mechanism to dissolve into a series of mini-trials.

 "The predominance requirement prevents class certification when complex and
diverse individual issues would overwhelm or confuse a jury or severely compromise a
party's ability to present otherwise viable claims or defenses." Stonebridge Life Ins. Co.,
236 S.W.3d at 205. Texas courts have consistently held that unconscionability claims
involve highly individualized inquiries that are not appropriate for resolution by a class
action. Wall v. Parkway Chevrolet, Inc., 176 S.W.3d 98, 106-08 (Tex. App.-Houston [1st
Dist.] 2004, no pet.) (concluding that individual issues would predominate because
defendants must be able to inquire what purchasers would have done with concealed
information); Peltier, 51 S.W.3d at 623-24 (concluding that individual questions of
knowledge, ability, experience, and capacity would predominate). 

 As Hertz and Texas South point out, customers have varying degrees of knowledge,
ability, experience, and capacity that would affect what they knew or cared to know about
the FSC. Hertz and Texas South have a due process right to investigate these issues and
present them at trial. Stonebridge Life Ins. Co., 236 S.W.3d at 205; Bernal, 102 S.W.3d
at 437. Certifying a class to prosecute an unconscionability claim would severely
compromise this right and deny Hertz and Texas South their ability to defend against the
claim. Accordingly, the trial court abused its discretion in determining that common issues
would predominate with respect to the unconscionability claim. (9)

IV. Rigorous Analysis and Trial Plan
 

 Texas South and Hertz point to several infirmities in the trial plan that they assert
require reversal and decertification. It is undisputed that Gomez did not rent from a Hertz
corporate location. Instead, he rented from Texas South, a Hertz licensee. Hertz and
Texas South argue, therefore, that in order to impose liability on Hertz, Gomez and other
similar class members will have to establish some sort of agency or "vicarious liability"
principal to establish Hertz's contractual liability. Texas South and Hertz attack nearly
every class certification requirement based on the fact that Gomez rented from Texas
South and not directly from Hertz. 

 Hertz and Texas South both focus their arguments on whether Gomez's claims are
typical of the class members' claims, and Texas South further argues that common issues
will not predominate due to Gomez's unique position in relation to the class. Texas South
argues that the trial plan fails to adequately distinguish between Hertz and Texas South
and does not explain how the claims will proceed against each defendant, which is
particularly egregious given the problems with Gomez's representation of the class. Texas
South further argues that Gomez did not put on any evidence demonstrating that he has
a viable claim against Texas South because all the evidence presented to the trial court
related to FSCs charged by Hertz corporate locations. 

 Second, Texas South argues that Gomez did not join Texas South as a defendant
until September 15, 2004, yet the trial court certified a class of consumers that were
charged an FSC after February 6, 2000. According to Texas South, the four-year statute
of limitations applicable to this case would bar any claims by class members charged an
FSC between February 6, 2000 and September 15, 2000. Texas South argues that this
time period accounts for 18.85% of all Texas South's rentals to class members. It argues
that the trial court did not address this defense in its trial plan. We agree with both
arguments.

A. Trial Plan Requirement 

 In Southwestern Refining Co. v. Bernal, the Texas Supreme Court explained that
it "is improper to certify a class without knowing how the claims can and will likely be tried." 
22 S.W.3d at 435. Thus, the supreme court imposed a "trial plan" requirement: "A trial
court's certification order must indicate how the claims will likely be tried so that
conformance with Rule 42 may be meaningfully evaluated." Id. The court admonished trial
courts not to rely on the mere assurances of counsel that any problems with rule 42's
requirements can be overcome--rather, the trial court must go beyond the pleadings,
understand the claims and defenses, relevant facts, and substantive law in order to
determine the certification issues. Id. 

B. Problems with Gomez's Representation of the Class

 Because we have held that individual issues will predominate with respect to
Gomez's fraud and U.C.C. claims, the only remaining claim is Gomez's breach of contract
claim. Gomez pleaded apparent authority, agency by estoppel, ratification, vice-principal,
joint enterprise, conspiracy, and partnership theories in an attempt to establish a claim
against Hertz directly. Hertz and Texas South argue that each of these theories will require
an individual analysis that will subsume the litigation. 

 The trial court's order does not analyze the specific elements of each of these
theories. In fact, the trial court's discussion of predominance does not mention these
issues at all. In discussing typicality, however, the trial court seems to suggest that these
issues could be handled on a class-wide basis:

 The fact that Plaintiff will be required to establish corporate liability upon the
theories pled does not, as Hertz argues, create a 'unique hurdle' that
impermissibly distinguishes Plaintiff from those who rented from a corporate
location. There is no conflict between Plaintiff and these corporate renters
going to the very subject matter of the lawsuit, if there is any conflict at all. 
Everyone in the Class was charged an FSC in Texas after February 6, 2000,
whether they rented from a licensee or from a corporate location.

Appendix at p. 8. The trial court's order failed to rigorously analyze the predominance
requirement by failing to address the elements of proof required for these liability theories
and by failing to set out in detail how each element can be managed efficiently on a class-wide basis. Stonebridge Life Ins. Co., 236 S.W.3d at 205; Henry Schein, Inc., 102 S.W.3d
at 694; Bernal, 22 S.W.3d at 434. 

 For example, apparent authority "may arise either from a principal knowingly
permitting an agent to hold herself out as having authority or by a principal's actions which
lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a
reasonably prudent person to believe that the agent has the authority she purports to
exercise." Gibson v. Bostick Roofing and Sheet Metal Co., 148 S.W.3d 482, 491 (Tex.
App.-El Paso 2004, no pet.) (citing Ames v. Great S. Bank, 672 S.W.2d 447, 450 (Tex.
1984)); see Patel v. Kuciemba, 82 S.W.3d 589, 596 (Tex. App.-Corpus Christi 2002, pet.
denied). Apparent authority is an estoppel principle--that is, it is based on a
representation by the principal that causes justifiable reliance and resulting harm. Baptist
Mem'l Hosp. Sys. v. Sampson, 969 S.W.2d 945, 948 & n.2 (Tex. 1998); Wyndham Hotel
Co. v. Self, 893 S.W.2d 630, 634 (Tex. App.-Corpus Christi 1994, writ denied) (providing
that party's justifiable, detrimental reliance on representation of authority is element of
apparent authority); Ybanez v. Anchor Constructors, Inc., 489 S.W.2d 730, 735 (Tex. Civ.
App.-Corpus Christi 1972, writ ref'd n.r.e.) ("The doctrine of apparent authority does not
apply if the third person . . . who, by dealing with the agent . . . , was not mislead to such
an extent that he has been induced to change his position to his detriment."). The trial
court did not analyze whether reliance, under these circumstances, could be established
on a class-wide basis, nor did it discuss how such issues could be handled at trial.

 In State Farm v. Lopez, the supreme court addressed arguments similar to those
advanced by Texas South. 156 S.W.3d at 556. In that case, a class of State Farm
policyholders in Texas was certified to prosecute claims for fraud, malicious suppression
of dividends, breach of fiduciary duty, and misrepresentation. Id. at 552. The trial court
did not include a trial plan in its order certifying the class, and on appeal, the court of
appeals held that because predominance and superiority of the class vehicle were not
challenged, a trial plan was not required. Id. at 553.

 The Texas Supreme Court held that Bernal's trial plan requirement was not limited
to an analysis of predominance and superiority. Id. at 555. Rather, the court held that
"[r]equiring a certification order to contain a trial plan allows a reviewing court to
meaningfully evaluate whether certification of the class conforms with all Rule 42
prerequisites." Id.

 State Farm argued that Illinois law applied to bar the class representatives' claims,
and because the class representatives had no viable claims, the class representatives'
claims were not typical of the class. Id. State Farm also argued that the class
representatives were inadequate to represent the class. Id. at 555. It reasoned that
current policyholders, like the class representatives, could potentially have an interest in
seeking less damages against State Farm to ensure that funds would be available to pay
policy claims, whereas former policyholders would not have such an interest. Id. at 556. 
Furthermore, State Farm argued that the trial court did not consider how to protect the
interests of policyholders outside of Texas or the application of Illinois law. Id. at 556.

 The supreme court agreed and decertified the class. Id. It held that because the
trial court did not (1) identify the specific causes of action to be decided in this case, or (2)
indicate how the claims would be tried or the substantive issues that would control the
litigation, it could not meaningfully evaluate the challenged requirements for certifying the
class. Id. at 556-57.

 Here, the trial plan is entirely devoid of any discussion of how the claims against
Texas South and Hertz will proceed, given that Gomez did not rent directly from Hertz. 
Without such an analysis, it is difficult, if not impossible, for us to determine if the class
should have been certified. Id. We can surmise that the trial court's failure to include any
discussion of these issues in the trial plan is a result of its failure to rigorously analyze the
agency principles in light of the predominance requirement, as we held above. It may be
that sub-classes should be formed, and a class representative may need to be appointed
to represent a subclass of plaintiffs who rented directly from Hertz. The trial court did not
explore any of these alternatives. Additionally, the trial court did not analyze how it would
handle Texas South's limitations defense. This may be dealt with easily if the trial court
chooses to divide the class into subclasses. Again, the trial court did not consider this
option.

 The trial court held that "[b]ecause all issues in this case are common, the trial plan
can be relatively simple, and would require only one jury and one trial." As is apparent
from our discussion above, this holding was incorrect, and the landscape of this case has
been significantly altered through our discussion of Hertz and Texas South's complaints. 
Accordingly, we decertify the class breach of contract claims against Hertz and Texas
South without prejudice. On remand, the trial court must consider the issues we outlined
above and must complete a thorough trial plan that (1) examines the agency theories
above in detail; (2) identifies common issues and examines whether those issues will
predominate; (3) examines the possibility of subclasses with separate class
representatives, or explains how Gomez, if he remains the only class representative, could
efficiently prove his claims against Hertz and Texas South in light of the pleaded agency
principles. 

V. Conclusion

 For all the foregoing reasons, we decertify the class and remand to the trial court
for proceedings consistent with this opinion.


 _____________________________ 

 GINA M. BENAVIDES,

 Justice



Opinion delivered and filed

this the 17th day of July, 2008. 

1. Texas South Rentals, Inc. is also known as Texas South, Inc. We will refer to it as "Texas South."
2. The order certifying the class is thirty-six pages long, and we have attached the entire order as an
appendix to this opinion. 
3. It is arguable that this exclusion, by its terms, certifies the class claims only against Hertz and not
against Texas South. The trial court's certification order rarely mentions Texas South or identifies it as a
separate defendant--an infirmity we rely upon for our holding in Part IV. The trial court assumed that the FSC
was "borne out of and distributed by a corporate policy, regardless of whether the entity imposing the charge
is a corporate location or a licensee," Appendix at p. 5, and we believe that the trial court did not intend by the
language in its order to exclude Texas South as a defendant. Texas South likewise assumes that the order
certifies a class against it. We will do the same. 
4. In the interest of brevity, we will only discuss the contents of the order where it is pertinent to our
analysis.
5. Hertz and Texas South further argue that individual issues will predominate with respect to agency
theories Gomez pleaded as a means to establish liability against Hertz. That issue is discussed in Part IV. 
6. The court addressed the purchasers' fraud, breach of express warranty, negligent misrepresentation,
promissory estoppel, and DTPA "laundry list violations," which all had reliance as an element. Henry Schein,
Inc. v. Stromboe, 102 S.W.3d 675, 693 (Tex. 2002). 

7. In dicta in Southwestern Bell Telephone Co. v. Marketing on Hold, Inc., we surmised that class-wide
evidence of reliance could exist in that case. 170 S.W.3d 814, 827-28 (Tex. App.-Corpus Christi 2005, pet.
granted). However, we did so only on the assumption that reliance was not an element of the causes of action
pleaded in that case. Id. The parties do not dispute that reliance is an issue in this case, and we are not
constrained by our prior decision in Southwestern Bell, which is currently under review by the Texas Supreme
Court. 
8. The supreme court denied review in Alford and dismissed for want of jurisdiction in Chastain. A
denial of review or a dismissal of a petition for want of jurisdiction by the Texas Supreme Court is not a
comment on the correctness of the court of appeals' opinion below, although parties often argue as much. 
See Tex. R. App. P. 56.1(b)(1), (2); see also Dylan O. Drummond, Citation Writ Large, The Appellate
Advocate, State Bar of Texas Appellate Section Report, Vol. 20 No. 2, pp. 103-05 (Winter 2007).
9. Hertz and Texas South lodge several other arguments against a predominance finding in this case. 
First, Hertz and Texas South argue that Gomez's claims under the U.C.C. are defensive in nature and cannot
provide a method for affirmative relief after a contract has been fully performed. Furthermore, Texas South
argues that Gomez's U.C.C. claims require a determination that each plaintiff qualifies as a consumer, raising
numerous individual issues. Given our disposition, we need not decide these issues and express no opinion
as to these arguments. See Tex. R. App. P. 47.1.